**COMMONWEALTH OF PENNSYLVANIA ex rel. Charles E. WHITING, Petitioner,**

v.

**A. C. CAVELL, Superintendent, State Correctional Institution, Bellefonte, Pa., Respondent (two cases).**

Nos. 590, 630.

United States District Court
Middle District Pennsylvania.

June 30, 1965.

Arthur B. LaFrance, Harrisburg, Pa., for petitioner.

Richard A. Devlin, Asst. Dist. Atty., Norristown, Pa., for respondent.

SHERIDAN, Chief Judge.

Petitioner, an inmate at the State Correctional Institution at Rockview, Bellefonte, Pennsylvania, filed two petitions for a writ of habeas corpus, which have been consolidated for disposition. They question the legality of petitioner's confinement under a sentence of life imprisonment for the 1956 murder of one Juan C. Otero.

The first petition, filed to No. 590 Habeas Corpus, raised several issues, but there was a misunderstanding on which issues were to be considered, and the hearing was limited to the voluntariness of certain statements made to the police prior to trial. The second petition, filed to No. 630 Habeas Corpus, covered the other issues raised by the first petition. A separate hearing was held on this petition.

EXHAUSTION OF STATE REMEDIES

1. No. 590 Habeas Corpus: Petitioner alleges that the voluntariness of the statements, while not specifically set forth, was necessarily raised in the state courts as a part of other issues before the Court of Common Pleas of Montgomery County in the second of two state court petitions for a writ of habeas corpus, filed to No. 63–8396. He cites page 2, paragraph 4, of that petition:

> " 'We passed the Office of Magistrate Green at Ashbridge Estate, Villanova, after leaving the police station, where I was questioned continually until 7:30 p. m., a matter of twelve hours which relator claims

was illegal, due that the police passed a magistrate's office and failed to prefer charges against him. Second, they held him twelve hours interrogating him, forced him to give blood and hari (sic) samples before a charge was lodged against him. Further the unreasonable delay as to giving relator preliminary hearing which was held thirty hours after arrest without a warrant."

The state courts did not pass on the issue of the voluntariness. The Commonwealth contends that the only reasonable interpretation of the petition is that petitioner was not given a prompt preliminary hearing, and that the issue of voluntariness was not raised in the state courts.

■ Section 2254, Title 28 U.S.C.A. provides that a federal court shall not grant a writ of habeas corpus unless it appears that the applicant has exhausted the remedies available in the courts of the state, and state remedies are not deemed exhausted if an applicant has the right under the law of the state to raise, by any available procedure, the question presented. See United States ex rel. Campbell v. Rundle, 3 Cir. 1964, 327 F.2d 153.

■ The operative facts in the state court petition are not sufficiently clear to have raised voluntariness. There is no mention of a statement in the above quoted paragraph. Even if there were allegations of a long period of time between arrest and the preliminary hearing, of questioning, and that a statement was made, the court would not be apprised of this issue. The degree to which an issue has been presented before it will be deemed to have been raised and state remedies with respect thereto exhausted is necessarily a case-by-case determination. In United States ex rel. Campbell v. Rundle, supra, at page 164, the court said: "[I]t can be asserted perhaps with some plausibility, that the issue of probable cause was not *clearly* before the Superior Court on the record presented. * * *" (Emphasis supplied.) In United States ex rel. Berkery v. Rundle,

E.D.Pa.1964, 226 F.Supp. 579, on a motion in the state court for a new trial on a burglary charge tried without a jury, the relator questioned whether certain information which identified him with the crime had come to the judge's knowledge erroneously. The Superior Court, 200 Pa.Super. 626, 190 A.2d 572, affirmed the denial of a new trial by the lower court. In a petition for allocatur to the Supreme Court of Pennsylvania, the relator raised the question of whether the trial was so fundamentally unfair as to violate the fourteenth amendment. The petition for allocatur was denied. No habeas corpus action was filed in the state courts. The district court held that this question, in constitutional context, clearly was not presented to or passed upon by the Superior Court.

"I am convinced that the state courts of Pennsylvania have not had an opportunity to review and pass upon the constitutional impact of these substantive questions. The alleged error was presented to the Superior Court in the narrow framework of an ordinary motion for a new trial; its constitutional context was never delineated. Under this circumstance, the denial of the petition for allocatur adds nothing to relator's petition. It does not mean that the Supreme Court passed upon the constitutional questions raised there for the first time. * * *"

■ The voluntariness of the petitioner's statement was not brought to the attention of the state courts, which should have an opportunity to consider and pass upon it. The petition in No. 590 Habeas Corpus will be denied.

■ 2. No. 630 Habeas Corpus: The petition in No. 590 Habeas Corpus, filed by petitioner *in propria persona*, alleged petitioner was not represented by counsel at his preliminary hearing, an illegal search and seizure, and that petitioner was held 32 hours before given a preliminary hearing. In the original petition this latter issue, now the subject of No. 590 Habeas Corpus, was presented from the standpoint that the mere delay

in providing the hearing was unconstitutional. In No. 590 and in No. 630 the question of mere delay in the preliminary hearing has been abandoned. The issues of illegal search and seizure and absence of counsel at the preliminary hearing have been presented to the Pennsylvania courts. See Commonwealth ex rel. Whiting v. Rundle, 1964, 414 Pa. 17, 198 A.2d 568, State remedies with respect to these issues, therefore, have been exhausted.

## THE MERITS OF NO. 630 HABEAS CORPUS

The facts preceding petitioner's arrest are in the opinion of the Pennsylvania Supreme Court denying his motions for a new trial and in arrest of judgment. Commonwealth v. Whiting, 1963, 409 Pa. 492, 187 A.2d 563. Juan Otero operated a tailor shop at 56 East Spring Avenue, Ardmore, Pennsylvania, and lived in a small connecting apartment in the rear. Shortly after 9:15 p. m. on June 14, 1956, Mrs. Isabel Strickland, who lived in an apartment above, heard sounds of a quarrel, scuffling and screams emanating from the apartment connected with the tailor shop below. She went to her bedroom window overlooking a rear entrance leading from the tailor shop premises to an alley, and saw a man, whom she did not recognize, start out of the Otero apartment and then immediately re-enter. It was dark and she could not see his face. Within seconds, the same individual came out again. He was dressed in a light "T" shirt, dark trousers, light baseball cap, and carried a paper clothing bag. Mrs. Strickland and neighbors hurried to the Otero premises and saw Juan Otero lying on the floor of the kitchen in a pool of blood. No one else was on the premises. Mrs. Strickland called the police at exactly 9:28 p. m. They arrived within minutes and found the victim dead as a result of six stab wounds in his body. Otero had been seen alive by another neighbor about 9:10 p. m., standing in front of his tailor shop.

Within minutes thereafter, Mrs. Strickland went by automobile to the home of her family, three blocks away. After a very brief stop, she started home and en route saw a man of the same build and appearance as the man she saw leaving the Otero premises. He was walking along the street about a block and one-half from the scene of the killing, still wearing the same type of clothing but he was not carrying a bag. She reported this fact to the police. When she first saw this man she could not remember his name, but thereafter, at about 2:00 a. m. on June 15, 1956, she realized that it was petitioner, and so told the police.

The Search and Seizure: The facts relating to the search and seizure were never adequately developed or resolved at the state court trial. The search and seizure issue was not raised at the trial or in the post-trial motions and the few facts having a bearing on it came out incidentally to the testimony on the other issues. In denying, without hearing, the petitions for a writ of habeas corpus, the Court of Common Pleas of Montgomery County said:

"Petitioner also alleges that immediately after he was arrested, the police asked him where he lived and when he told them they proceeded to his home and searched it and found some clothing alleged to be his. He complains that the police made the search illegally because they had no search warrant. The legality of a search by police officers depends upon its ' "reasonableness and propriety under the circumstances rather than upon the practicability of procuring a search warrant." The fact that the police officers might have had the opportunity to secure a search warrant does not detract from the "reasonableness" of the instant search if the "totality of the facts" surrounding the search and seizure were reasonable. * *' Com. v. Cockfield, 411 Pa. 71, 77 [190 A.2d 898] (1963). Accepting petitioner's version of the police officers' search as true for present purposes, in view of the background or setting disclosed by the testimony of the Commonwealth's witnesses at the

trial, we find nothing unreasonable or improper in their search."

This court can find no "setting" disclosed by the trial testimony which would provide a basis for denying the petition. The Supreme Court of Pennsylvania affirmed the order of the Court of Common Pleas of Montgomery County (1964, 414 Pa. 17, 198 A.2d 568, supra). It did so on the basis that certain facts, set forth in the record of the trial, and detailed generally, showed that "[i]n the course of taking [the defendant] into custody [the police] searched the room where he lived. Under such circumstances, this was a lawful arrest and the search an incident thereto was valid and proper."

The basis for these conclusions of the Pennsylvania courts is not apparent. The trial record, as previously stated, contains only incidental references to facts which might bear on the validity of the search and seizure, and contains no facts in derogation of petitioner's allegations in his petition to the state courts and to this court. Accordingly, a hearing was held on the petition. Petitioner testified substantially in accordance with the allegations in the petition. His testimony and the record show the following: At 7:50 a. m. on June 15, 1956, about six hours after he was identified by Mrs. Strickland as the man she saw leaving the tailor shop, petitioner was taken into custody by a policeman at the corner of Spring Avenue and Simpson Road, Ardmore, Pennsylvania. There was no warrant for his arrest but its validity is conceded. He was taken four blocks in a patrol car to meet Captain Shaffer of the Ardmore police. He was put in Captain Shaffer's car and asked where he lived and where he stayed the night before. He gave his residence as Media, Pennsylvania. He had established this residence, a room in the house of his fiancee's mother, about four weeks prior to the murder. The police took petitioner, in handcuffs, about ten miles to Media where they arrived about one-half hour after his arrest. Without a warrant, they searched his room and found clothing, and other articles, which petitioner had worn or had with him the night before. While the record is not clear, it appears that the shoes petitioner was wearing and which were the same shoes he had worn the previous night, were taken from him at this time. The clothing was spotted with Otero's blood. Petitioner was never asked for permission to conduct the search and he did not give permission because he did not know his rights. A few hours after petitioner was taken away for questioning, the police returned to his room accompanied by his fiancee, Hazel Smith, who had shared the room with petitioner and who had also been arrested. Still without a warrant, the police asked her to search for his socks, which had not been found on the first search. She found them and they were used as evidence at the trial. There is no indication that either Hazel Smith or the landlady was asked for or gave permission to conduct the search.

The Commonwealth did not present any testimony on the question of search and seizure even though it presented testimony on other phases of the petition. Captain Shaffer, who directed the investigation and search, testified, with apparent good recollection, to the events which transpired at the preliminary hearing, but he was not questioned on the matters testified to by petitioner on the search and seizure.

The fourth amendment's prohibition against unreasonable searches and seizures, with the sanction that evidence so obtained is excluded from the trial, is applicable to the states through the fourteenth amendment. Mapp v. State of Ohio, 1961, 367 U.S. 643, 81 S. Ct. 1684, 6 L.Ed.2d 1081. The federal standard is applied to determine the reasonableness of the search. Ker v. State of California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726. The protection of the fourth amendment extends to those accused or suspected of a crime as well as to those not suspected. Belief, however well founded, that an article sought is

concealed in a house furnishes no justification for a search without a warrant. One's house cannot lawfully be searched without a warrant except as an incident to a lawful arrest. Agnello v. United States, 1925, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145. "But a search can be incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest." Stoner v. State of California, 1964, 376 U.S. 483, 486, 84 S.Ct. 889, 891, 11 L.Ed.2d 856. "Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, 1964, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777.

Under the uncontradicted evidence disclosed by the trial record and the record in this proceeding, the search, except for the taking of the shoes, was not incident to a lawful arrest. Petitioner's identification was established six hours before his arrest. He was in custody. The search made some ten miles away and one-half hour later, and the search made in Hazel Smith's presence, are not substantially contemporaneous with the arrest, and confined to the immediate vicinity of the arrest so as to be incident to a lawful arrest.

In its brief the Commonwealth argues first, that the legal principles on searches and seizures are set forth in various United States Supreme Court cases which involved relatively minor offenses and these principles should not be haphazardly applied to the extremely serious offense of murder. The constitutional guarantee against an unreasonable search and seizure makes no distinction between serious and relatively minor crimes. Courts must guard against the non-application of these principles, as well as their haphazard application.

The Commonwealth also argues that the Preston case recognizes the need to prevent the destruction of evidence of crime as justification for the rule allowing contemporaneous searches; that the purpose of the search was to obtain blood stained clothing worn by petitioner; and that since Hazel Smith had slept in the same room as petitioner on the night of the murder, she could have destroyed or removed the clothing so that the necessity for speed was clear. The court in Preston recognized that *contemporaneous* searches are justified by the need to prevent the destruction of evidence *on the accused's person or under his immediate control* and stated that this justification is absent where a search is *remote in time or place* from the arrest. Moreover, petitioner alone was identified as being at the scene of the crime. There is nothing to show that prior to the arrest and search, the police suspected Hazel Smith's involvement in the crime, or that they knew of the relationship of Hazel Smith and petitioner. Hazel Smith was arrested at 9:15 a. m., about an hour and one-half after petitioner's arrest, at Bryn Mawr hospital, some distance from her home. As to the shoes, however, petitioner was wearing them when he was taken into custody. Had the police realized at this time that petitioner had worn them the night before, they undoubtedly could have seized the shoes to prevent petitioner, for example, from scraping off the blood spots. The taking of the shoes one-half hour later when they became aware of this fact was not an unreasonable seizure, since the need to preserve such evidence still existed.

Did petitioner consent to the search, thereby waiving the protection of the fourth amendment? Courts indulge every reasonable presumption against waiver of fundamental constitutional rights. Villano v. United States, 10 Cir. 1962, 310 F.2d 680. Consent to search is not to be lightly inferred. United States v. Viale, 2 Cir. 1963, 312 F.2d 595. "Coercion is implicit in situations where consent is obtained under color of the badge, and the government must show that there was no coercion in fact. The government's burden is greater where consent is claimed to have been given while the defendant is under arrest." United States v. Page, 9 Cir. 1962, 302

F.2d 81, 84; Villano v. United States, supra. That petitioner told the officers where he lived, and did not object to the search which was made in his presence does not constitute a waiver. Hall v. Warden, Maryland Penitentiary, 4 Cir. 1963, 313 F.2d 483, 494. Cf. Abel v. United States, 1960, 362 U.S. 217, 234 et seq., 80 S.Ct. 683, 4 L.Ed.2d 668. Petitioner's failure to move to suppress the evidence before verdict also does not constitute a waiver. United States ex rel. Mancini v. Rundle, 3 Cir. 1964, 337 F.2d 268, 274. As pointed out in Mancini, from at least 1927 through 1961, the Pennsylvania courts admitted evidence illegally obtained so it was futile to object or move to suppress it.

▮ The trial record contains statements by petitioner and others which cannot be interpreted as an expression of consent. There are such remarks by petitioner as " * * * I turned over all my clothes," and by Captain Shaffer who answered in the affirmative when asked whether petitioner gave him the clothes. In the context of the record, these expressions are not significant. The issue of search and seizure was not in question. There are also expressions by petitioner, Captain Shaffer and another detective that the clothes were "taken" as opposed to "given." There is no evidence that petitioner voluntarily surrendered his clothes with full knowledge of his rights. As pointed out in United States ex rel. Mancini v. Rundle, supra, a waiver is an intentional relinquishment or abandonment of a known right or privilege. Walker v. Peppersack, 4 Cir. 1963, 316 F.2d 119.

There is nothing to show it was impracticable to obtain a search warrant.

▮ Finally, was the admission in evidence of the seized articles prejudicial? If there is a reasonable possibility that the evidence complained of might have contributed to the conviction, the admission is prejudicial regardless of whether there was sufficient other evidence on which petitioner could have been convicted. Fahy v. State of Connecticut, 1963, 375 U.S. 85, 86, 87, 84 S.Ct. 229,

11 L.Ed.2d 171. A Federal Bureau of Investigation agent testified the spots on all the seized items were human blood and that where tests were possible, it was found to be of the same blood group as that of the victim. The testimony of the location of the blood—on the leg and inside the right hip pocket of the trousers, on the band of petitioner's shorts, on the bill of his cap, on various places on his "T" shirt, on his socks—permitted an inference that plaintiff stabbed Otero during a struggle. Petitioner in his own defense testified that he came to Otero's shop to pick up some clothes, found Otero dead, panicked for fear of being wrongfully charged with killing him, and fled. If only the shoes were admitted in evidence, this story would have been much more credible, and the theory that petitioner was in close proximity with Otero when Otero was stabbed would have been substantially weakened. It is clear that the admission of the seized evidence was prejudicial and was not harmless error.

▮ This court is mindful of the recent case of Linkletter v. Walker, 85 S.Ct. 1731 (U.S. June 7, 1965), where it was held that a state prisoner at whose trial illegally seized evidence was introduced and whose conviction became final before the decision in Mapp v. State of Ohio, supra, cannot invoke Mapp's exclusionary rule to vitiate his conviction, even though the illegal search and seizure occurred later than that in Mapp. The Court in establishing a cutoff date for application of the exclusionary rule of Mapp chose the date of its Mapp judgment, June 19, 1961. The Court said: "The date of the seizure in Mapp has no legal significance. It was the judgment of this Court that changed the rule and the date of that opinion is the crucial date. In the light of the cases of this Court, this is the better cutoff time. * * *" Thus, the finality of the state proceeding at the cutoff date is the controlling factor. The Court in Linkletter defined a state court conviction as final " * * * where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had

elapsed before our decision in Mapp v. State of Ohio." The Supreme Court of Pennsylvania affirmed the denial of petitioner's post-trial motions on January 8, 1963. Petitioner's proceeding was not final when Mapp was decided and he has the right to attack the search and seizure.

It is not material that the attack is made in a collateral proceeding and not by direct appeal. The emphasis in Linkletter is on the cutoff date rather than the manner in which the right is asserted. The Court declared as of that date that the right existed. There is nothing to show that petitioner was aware of the right declared in Mapp, and being thus aware, knowingly and understandingly failed to assert it.

Absence of Counsel at the Preliminary Hearing: Petitioner contends that he was subjected to a preliminary hearing in the absence of counsel. He alleges that he expressed a desire to obtain counsel but was denied the right to do so; that he was thereby prejudiced because he was unable to make appropriate objections, conduct an adequate cross-examination or record the testimony at the hearing; and that prejudice is presumed in a capital case.

The Pennsylvania Supreme Court made no findings to support its ultimate conclusions of fact, but dismissed this point on the basis that petitioner pleaded not guilty at the hearing and that nothing that happened at the hearing was used against him at the trial or had the slightest effect on it.

It is not disputed that petitioner did not have counsel at his preliminary hearing. There is a substantial dispute as to whether petitioner had time to hire counsel, or requested counsel. Petitioner testified that he was not informed of the preliminary hearing until immediately before it began on Saturday, June 16, 1956, at 3:00 p. m.; that upon being taken up to the bar, and just prior to the commencement of the hearing, he asked the Justice of the Peace for a lawyer, but Captain Shaffer stated to the Justice of the Peace this would not be necessary

because "he was pleading not guilty for me"; at 8:00 p. m. on Friday, June 15, 1956, he and his father, after discussion, decided he would need a lawyer; his father was to obtain a lawyer; his family was in a position to hire a lawyer; his father was among the spectators when he arrived for the hearing; and on Saturday night he was informed by prison officials that they had been informed that counsel (whose office was a block from the site of the hearing) was obtained to represent him. A detective testified that at 10:15 a. m. on June 16, 1956, he told petitioner of the preliminary hearing scheduled for the afternoon, and produced a note to that effect which was placed in the police files at that time. Captain Shaffer testified that petitioner did not request a lawyer, nor did he ask the Justice of the Peace for a lawyer, that he made no statement regarding petitioner's need for representation, and that there was no discussion prior to the formal commencement of the hearing which was not recorded in the hearing minutes. These minutes were produced from the police files, were identified by Captain Shaffer as the minutes of the hearing, and in pertinent part, were the same minutes identified by the stenographer during the trial. These minutes contradict petitioner's testimony in many particulars. They show that petitioner himself pleaded not guilty. Petitioner said that Captain Shaffer was not sworn at the hearing; the minutes show he was sworn. Petitioner said that he did not know he had a right to cross-examine the two witnesses, Captain Shaffer and Isabel Strickland; the minutes show he was asked at the end of their direct examination whether he had any questions to ask them. Petitioner said that Mrs. Strickland testified at the hearing that she arrived home at 9:05 p. m., made a phone call and at that time heard a struggle and scream, and that the man she saw leaving Otero's shop was tall with broad shoulders, and that at the trial Mrs. Strickland testified that the events did not take place until after 9:15 p. m., at which time petitioner could not establish an alibi, and that the man she saw was

short and stocky, which description generally fit petitioner's physical appearance. The minutes of the preliminary hearing, however, show that Mrs. Strickland's testimony was substantially the same she gave at the trial. Petitioner has offered the trial testimony of various people, some who testified in accordance with petitioner's recollection of Mrs. Strickland's testimony. This testimony is not persuasive. It consists of the testimony of petitioner, his cousin, the stenographer at the preliminary hearing, and Mrs. Strickland. This court finds that petitioner did not request counsel prior to the preliminary hearing. This court also finds that petitioner was not told that he had a right to be represented by counsel.

In Hamilton v. State of Alabama, 1961, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114, and White v. State of Maryland, 1963, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed.2d 193, the Supreme Court of the United States held that a defendant in a criminal case is entitled to representation by counsel at a preliminary hearing when such hearing is or under the circumstances becomes a critical stage in the proceeding against him. The Pennsylvania Supreme Court has held that even in a murder charge, the preliminary hearing is not ordinarily a critical stage in the proceedings, and that a lack of counsel at such a hearing does not violate due process in the absence of unusual circumstances which transform the proceeding into a critical stage. Commonwealth ex rel. Butler v. Rundle, 1965, 416 Pa. 321, 206 A.2d 283; United States ex rel. Maisenhelder v. Rundle, E.D.Pa.1964, 229 F.Supp. 506. In determining whether a preliminary hearing is or has become a critical stage of a proceeding, the cases look to the possible prejudicial effect. Thus, in United States ex rel. Parker v. Myers, E.D.Pa. 1964, 233 F.Supp. 563, aff'd for the reasons stated by the district court, 3 Cir. 1965, 341 F.2d 303, the court in denying a petition for a writ of habeas corpus discussed both the Hamilton and White cases, and noted that a preliminary hearing, not normally a critical stage under the procedure of a given state, can nevertheless become critical if events transpire which are *likely to prejudice the trial*. The court in that case found no likelihood of prejudice at the trial.

Petitioner cites Pointer v. State of Texas, 1965, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923; Spano v. State of New York, 1959, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265; Escobedo v. State of Illinois, 1964, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Massiah v. United States, 1964, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246; Hamilton v. State of Alabama, supra; White v. State of Maryland, supra, in support of his argument that the need for likely prejudice as a result of events transpiring at pretrial investigations or preliminary hearings, as expounded in prior cases, has been substantially weakened, and in any event, a likelihood of prejudice has been shown in this case. All of these cases turn on a possibility of prejudice and, therefore, are distinguishable. In some, a request for counsel was made; here there was no request. In all, some affirmative prejudice was likely to result. In Spano, Escobedo and Massiah incriminating statements were given; here, petitioner did not testify and gave no statement at the preliminary hearing. In Hamilton, arraignment was a critical stage of the proceeding where the failure to assert certain defenses would result in their loss at the trial; here, this was not true. In White, a guilty plea taken at a preliminary hearing was later used in the trial which followed a change of plea to not guilty; here, a plea of not guilty was entered at the preliminary hearing. And in Pointer the complaining witness at the preliminary hearing, a stage of proceeding in Texas where pleas are not taken, was absent from the trial and the testimony at the preliminary hearing was used in the trial without the defendant having had an opportunity, through counsel, to cross-examine; here, the witnesses at the preliminary hearing were fully cross-examined at the trial by counsel who had been engaged within a few days of the murder and several months

in advance of trial. See United States ex rel. Parker v. Myers, supra. In Pointer the Court declined to decide whether failure to appoint counsel to represent Pointer at the preliminary hearing unconstitutionally denied him the assistance of counsel. Petitioner complains that he did not know he could have recorded the testimony at the preliminary hearing, but it was recorded by the police, was not shown to be false in any detail, and is adverse to the contentions petitioner seeks to advance from his recollection. Under all the circumstances the preliminary hearing was not a critical stage.

Petitioner argues that a showing of prejudice is not necessary in a capital case, citing Hamilton v. Alabama, supra. In that decision and in White v. Maryland, supra, which cited Hamilton, the Court found that the preliminary hearing was a critical stage based on circumstances which showed a possibility of prejudice at the trial. The language in those cases that "[W]e do not stop to determine whether prejudice resulted" appears to mean that petitioner need not show he was actually prejudiced at the trial, but does not eliminate the requirement that a possibility of prejudice must be shown from things that happened at the preliminary hearing, thereby making it a critical stage of the proceeding when counsel is required. Moreover, in United States ex rel. Parker v. Myers, supra, and United States ex rel. Maisenhelder v. Rundle, supra, both capital cases, the Court discussed the White and Hamilton cases and based its decisions on the absence of a likelihood of prejudice which would convert a preliminary hearing into a critical stage.

On the issue of search and seizure, the petition for a writ of habeas corpus will be granted, but the Commonwealth will be given opportunity either to appeal from this grant of the writ or to retry petitioner. Execution of the writ will, therefore, be stayed for a period of thirty (30) days and if at the end of that period of time the Commonwealth has neither appealed nor initiated proceedings to retry petitioner, the writ will be executed and the petitioner will be released. United States ex rel. Manduchi v. Tracy, E.D.Pa.1964, 233 F.Supp. 423, 428.