[Crim. No. 11798.   Second Dist., Div. One.   Mar. 16, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK JAMES CHADDOCK, Defendant and Appellant.

Velma E. Williams, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of possessing a .45 caliber automatic pistol, having a barrel of less than 12 inches in length and defendant having theretofore been convicted of a felony.

In an information filed in Los Angeles County on June 1, 1965, defendant was charged with possessing a firearm (above described) on or about April 28, 1965, having theretofore been duly convicted of a felony. Defendant pleaded not guilty and the cause was upon stipulation submitted upon the transcript of the proceedings at the preliminary hearing, each reserving the right to submit further evidence. Further evidence was introduced at the time of trial (July 22, 1965) by each side. Defendant was found guilty as charged and sentenced to the state prison. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: On April 28, 1965, at about 10:30 a.m., Officer Surwillo, of the Lynwood Police Department, went to the apartment of defendant in response to a report filed by another officer that a car registered to defendant matched the description of a car involved in a market robbery in Lynwood. Officer Surwillo made an effort to locate the car in the area of defendant's apartment and finally knocked on defendant's apartment door. Defendant invited Officer Surwillo into his apartment. Defendant was asked whether he had any prior felony record and he replied that he had served time in a federal prison and was at that time out on a five-year parole. Officer Surwillo then asked defendant if he (the officer) could see defendant's car and defendant said, ''Certainly.'' He said further that the car was downstairs on the street. Defendant and the officer went downstairs to the street but it developed that defendant's car had been repossessed earlier that morning. It was explained to defendant that a man seen leaving the scene of a robbery matched his description. The officer asked defendant if he would be willing to accompany him to the market where the robbery had occurred to see if the victim, or other witnesses, could identify him. Defendant stated that he would be willing to go to the market—that he wanted to get the matter cleared up. They went to the market and the victim, upon seeing defendant, said that he did not think defendant was the man who had committed the robbery. There were no threats made to defendant, he was not arrested and he was not handcuffed. The officer then drove defendant back to his apartment.

The officer had the information that the gun used in the robbery was a small foreign-type revolver. On the way back to the apartment, and before defendant got out of the car, the officer asked defendant if he had a gun and defendant replied in the affirmative, stated that he had a .45 automatic in his apartment—that he had borrowed it to go rabbit hunting. Defendant was then asked if such did not violate the terms of his parole and defendant said: ''I don't think so.'' The officer asked defendant if he minded taking him to the gun and defendant responded in effect that he had no objections. The defendant got out of the car, the officer followed defendant out of the car and into the apartment and then asked defendant where the gun was located. Defendant responded, ''It's in the closet'' and pointed to a closet door. Officer Surwillo retrieved a .45 caliber automatic pistol and

a box of dum-dum bullets from the closet. Defendant was placed under arrest and on the way to the station was advised that anything he might say could be used against him, that he could use a telephone and call counsel and not to say anything until counsel was present. Defendant stated that he understood his constitutional rights.

Appellant now asserts that the search was unreasonable and the gun and bullets should not have been received into evidence; that defendant made admissions before being advised of his constitutional right to keep silent.

This case should be disposed of pursuant to the guidelines of the rules in *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], as enunciated June 22, 1964, and January 29, 1965, respectively. The rules of *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] (June 13, 1966) are not applicable to this case. (See *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 293, 423 P.2d 221].)

The investigation which the officer was making was a general inquiry into an unsolved crime, namely, a robbery of a market. In fact, the appellant was not identified by the victim as being the robber and he was being returned to his apartment by the officer when the officer inquired of appellant whether he (the appellant) had a gun. At the time of appellant's first saying that he had a gun in his apartment, he was not in custody, nor had he been arrested; the victim had absolved the appellant of any crime. The investigation under the circumstances was not focused on defendant as a prime suspect. Perhaps the police had no one else to suspect at the time of the asking the defendant whether he had a gun, but, in any event, they had little, if anything, to go on as to defendant after the victim had stated, in effect, that defendant was not the robber. There is nothing in the record to indicate what, if anything, the police learned from the time they left the market with the defendant to the time of asking the question about the possession of a gun. We think that the questions, under the circumstances, were a justifiable type of routine inquiry.

■ There is no requirement in the law that an officer shall first advise a person of his constitutional rights and of his right to refuse to grant a consent to a search before the officer seeks a valid consent from the person to conduct a particular search. ■ The mere asking of permission to

enter and make a search carries with it the implication that the person can withhold permission for such an entry or search.

Here the appellant freely and voluntarily consented to the search. The evidence is clear that there was no implied assertion of authority upon the part of the officer. The statement by the appellant that he owned a gun was purely gratuitous; in fact he indicated that he did not even think it was a crime for him to possess the gun.

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied April 4, 1967, and appellant's petition for a hearing by the Supreme Court was denied May 10, 1967.