[Crim. No. 12570.   Second Dist., Div. Four.   Aug. 31, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. JOE CAMPU-ZANO, Defendant and Appellant.

Worrell & Niles and Claude Vibart Worrell, Sr., for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—Defendant was charged with possession of a narcotic for sale (Health & Saf. Code, § 11500.5). Defendant

pled not guilty; jury trial was duly waived. Pursuant to stipulation the cause was submitted on the testimony in the transcript of the preliminary hearing with each side reserving the right to offer additional evidence. Defendant was found guilty; motion for new trial was denied; probation was denied; and defendant was sentenced for the term prescribed by law. Defendant appealed from the judgment and from the order denying new trial.[1]

Prior to May 27, 1965, Officer Fesler had information that Alex Marquez and another person, unknown, were dealing in heroin at a service station at 1100 West Temple Street.

On May 27, 1965, Officer Fesler and Sergeant Durrell were given permission by the service station owner, Al Moret, to search the station. Officer Fesler saw a work bench where he observed two shirts and a pair of trousers in a pile. The officer picked up one of these shirts, which bore the name ''Joe.'' Under that shirt was another shirt and under the second shirt he observed a portion of a white bag. Examination of the contents of the bag disclosed six condoms of powder. Mr. Moret said ''Joe'' was the defendant and that the shirt bearing his name belonged to defendant. The officer arrested defendant and informed him that he had a right to an attorney and a right to remain silent, and that anything he said could be used in evidence against him.

The officer asked defendant where he lived, and defendant gave his address. This was the same address previously given by Al Moret as defendant's address. Defendant was handcuffed and they left the station. The officer asked whether they could search his house and defendant replied, ''Yes, you can search my house, I don't have any narcotics there.'' When they reached defendant's address and got out of the car, defendant pointed out one of the courts and stated that was where he lived. Officer Fesler reached in defendant's pocket and pulled out some keys. Defendant stated that the big key fit the front door. Defendant assisted in opening the door or instructed the officers in opening it. In the apartment, Sergeant Durrell found two cans of milk sugar under the sink, and a box labeled ''3 dozen Trojan prophylactics.'' Only 30 condoms were in the box. The kitchen wastebasket had a torn portion of a white paper sack that appeared to be the same color and material as that found at the service station.

---

[1] The order denying a new trial is not appealable (Pen. Code, § 1237), and the purported appeal from that order must be dismissed.

An expert chemist examined the contents of three of the condoms seized at the service station and found 25 percent heroin. Milk sugar is commonly used to dilute pure heroin prior to selling it.

An expert criminalist testified that, in his opinion, the portion of the paper sack in the wastebasket in defendant's apartment and the sack at the service station had formerly been joined and were one paper sack.

Defendant and Al Moret, the station owner, testified that the work bench was the place other employees used to change clothes and that was where they left clothes to be taken to the laundromat. Defendant testified that he never consented to the search; that the police never asked permission; that he was handcuffed; that he did give his address; and that he did point out where he lived.

Defendant makes three contentions on this appeal. He argues that the evidence is insufficient, that the identities of the informants should have been disclosed, and that the search of the house was illegal because defendant did not consent to it.

## I

█ The evidence is sufficient, assuming that all of it was admissible. The discovery of the scrap of paper in defendant's house, where he lived alone, effectively tied defendant to the possession of the heroin which was found in the paper bag beneath defendant's shirt in the service station. The quantity and quality of the heroin, its packaging and location, reasonably support the inference that it was held for sale.

## II

█ Defendant did not, in the trial court, request disclosure of the identity of the informants. Nor did defendant make any objection, either in the trial court or at the preliminary examination, upon the ground that he had been arrested illegally. Had either point been raised, the trial court would have had an opportunity to rule, and the prosecution would have had the opportunity to produce additional evidence if the trial court had ruled in defendant's favor on those matters.

At the preliminary examination Officer Fesler testified that he had received information from several different sources concerning narcotics activity at the service station, and that some of these informants told of having themselves purchased narcotics there. The officer also testified that he had made obser-

vations of activities at the station on numerous occasions. In the course of cross-examining Officer Fesler at the preliminary, defendant's attorney asked for the names of the informants, the officer refused to answer, citing Code of Civil Procedure section 1881, subdivision 5, and the magistrate denied defendant's request that he be ordered to answer.

Officer Fesler was present at the trial and testified in rebuttal, but defendant never gave any indication to the trial court that he desired further cross-examination of the witness with respect to the events preceding the arrest.

The stipulation by which the parties agreed to use the preliminary transcript at the trial was in the following form:

"MR. McCORMICK: . . . The People offer to stipulate that the matter may be heard by this Court sitting without a jury on the basis of the testimony given at the preliminary hearing; that the witnesses there called, sworn, and testified, are deemed to be here called, sworn, and testified in a like manner; that all exhibits entered into evidence at the preliminary hearing are deemed entered into at this proceeding, subject to whatever objections either side may make. That all stipulations entered into at the time of the preliminary hearing are deemed entered into for this proceeding, with each side reserving the right to call what additional witnesses they desire. MR. WORRELL: So stipulated."

This stipulation, unlike the one considered and criticized in *People* v. *Griffin,* 250 Cal.App.2d 545 [58 Cal.Rptr. 707], clearly indicates that objections to evidence made at the preliminary examination are waived unless restated in the trial court. By this stipulation, the entire preliminary transcript and exhibits are made admissible, "subject to whatever objections either side may make," *i.e.,* may make in the trial court. No objection to any of that evidence was made in the trial court except the objection to the evidence found in the house, which will next be considered.

### III

■ Defendant contended at the trial, and argues here, that the search of the house, not being at the place of arrest, could be legal only if there had been consent, and that defendant had not consented.

The applicable rule is stated in *People* v. *Michael* (1955) 45 Cal.2d 751, 753 [290 P.2d 852]: "Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority,

is a question of fact to be determined in the light of all the circumstances.''

In *People* v. *Smith* (1966) 63 Cal.2d 779 [48 Cal.Rptr. 382, 409 P.2d 222], one of the appellants, Mrs. Walker, had been arrested and taken to the police station, where she gave the police her consent to search her house and also made statements which incriminated her. The Supreme Court held (at p. 801) that the statements were inadmissible because of failure of the police to give the warning required by *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], but the search of the house was held to be lawful, by reason of consent. The court said (at p. 798) : ''Mrs. Walker also contends that her consent was involuntary and was given only 'because of assertion of authority by police officers.' While permission obtained by means of such an assertion of authority is constitutionally inadequate (*People* v. *Shelton* (1964) 60 Cal.2d 740, 746 [36 Cal.Rptr. 433, 388 P.2d 665], and cases cited), there is no showing of a compulsion of this type in the present case. It is true that Mrs. Walker was under arrest at the time; but that fact, although relevant (*People* v. *Shelton, supra,* at p. 745), is 'not conclusive' (*Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439, 443 [30 Cal.Rptr. 1, 380 P.2d 641]). 'It cannot be said as a matter of law that consent given by a defendant is involuntary because it is given while he is under arrest.' (*People* v. *Fischer* (1957) 49 Cal.2d 442, 448 [317 P.2d 967].) Rather, the question is one of fact 'to be determined in the light of all the circumstances.' (*People* v. *Michael* (1955) *supra,* 45 Cal. 2d 751, 753; accord, *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 762-763 [44 Cal.Rptr. 313, 401 P.2d 921].) ''

In the case at bench the evidence as to consent is in conflict. Giving the People the benefit of the evidence most favorable to the judgment, we have this :

The police made only a simple request, without any assertion of authority. The defendant consented verbally and co-operated throughout. Although handcuffed he assisted the officers in removing the keys from his pocket and identified the one that fitted the door. The trial court expressed its ruling in the following language: ''THE COURT: Gentlemen, I am persuaded that this was a consent search, and the thing that weighs heavily in the balance of my opinion is that the defendant knew that he did not have any new narcotics there and knew that it would be to his advantage, or at least probably

believed that at the time he told the officers, 'Sure, go and look; I haven't got it.' The evidence will be received.''

The test on appeal is whether there is substantial evidence of consent in fact. The law does not prescribe any particular form of words to be spoken by the officer as a prerequisite. The evidence here supports the finding that the consent was genuine, and hence the search was legal.

The judgment is affirmed. The purported appeal from the order denying a new trial is dismissed.

Jefferson, J., concurred.

KINGSLEY, J.—I dissent.

I agree with the majority opinion in holding that there was no issue before the trial court as to the legality of the arrest and that the trial court had ample basis to find, as it did, that defendant's consent to search his apartment was not coerced within the meaning of *Castaneda* v. *Superior Court* (1963) 59 Cal.2d 439 [30 Cal.Rptr. 1, 380 P.2d 641], and the cases which have followed and applied the rule of that case.

But, without the evidence disclosed by the search, the evidence was not sufficient to sustain a conviction. The narcotics found at the station were in a paper sack, under a shirt of unknown ownership, which was under the shirt belonging to defendant. There is nothing in the information secured by the officers at the station to show that defendant was ever aware of the sack under the shirt below his, nor is there anything to suggest that the paper sack itself in any way suggested that it might contain narcotics. The record is devoid of anything to suggest that any of the data the officers had received about narcotic activities at the station had pointed a finger at this defendant as being involved. It follows that it requires evidence of the things discovered by the subsequent search of defendant's apartment to connect him with the heroin found at the station.

However, I am convinced that the search, although "voluntary" in the *Castaneda* sense, was unlawful for constitutional reasons discussed below.

It is true that the ground on which I here rely was not expressly urged on the trial court. But it is available on this appeal because it rests on cases not decided when the trial was held.[1] (*People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr.

---

[1] While the trial, begun on March 29, 1966, and concluded on April 6, 1966, followed *Dorado*, it preceded *Henry*, hereinafter discussed; and *Henry* was the first California case that clearly warned counsel of the

30, 401 P.2d 382]; *People* v. *Kitchens* (1956) 46 Cal.2d 260 [294 P.2d 17].)

Since the search was of an apartment removed from the place of arrest, the search cannot be sustained as one incident to the arrest (see Witkin, Cal. Evidence (2d ed. 1966), § 119, pp. 120-121). It is clear from the record that the search was not pursuant to any search warrant. The police had no information identifying the defendant until they had searched the service station. His arrest, the location of his home, the trip there, the entry and search, followed in an unbroken series of events. The Officers relied on the alleged consent; neither they, at that time, nor the Attorney General here, place reliance on anything else.

But, although the consent was not vitiated for the reasons set out in *Castaneda,* I think that it was illegal under the doctrine first announced in *People* v. *Dorado,* expanded in *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and still further expanded in *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951]. Defendant was in custody, suspicion admittedly had focused on him, and the search was frankly for the purpose of securing additional evidence against him. If a warning of his constitutional right to be free from a search not justified by a warrant or as incident to his arrest should have been given, then the search was illegal. I conclude that the principles applied in the cases just referred to also compel a warning of defendant's rights under the Fourth Amendment.[2]

---

possible availability of the ground herein considered and which, so far as we are aware, is now first determined.

Both *Castaneda* and the problem herein involved were forecast in dicta in a farsighted opinion in 1956 (*People* v. *Wilson* (1956) 145 Cal.App.2d 1, 7 [301 P.2d 974]), where the court said: "While the question of consent is one of fact (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469]), it is obvious that a 'permission' granted after a person has been improperly arrested and searched, while he is still in custody, and without informing him of his legal right to refuse permission, is not a real or proper consent." But the important implications of that language seem to have been overlooked, and the case has been cited only for the proposition (not herein involved as we have seen) that a search following an illegal arrest is tainted by that illegality. We do not regard the hint given in *Wilson* as being of such a nature as to prevent the operation of *Kitchens.*

[2]The cases hereinafter discussed all refer to warnings of rights under the Fourth Amendment. Absent some other indication of the trend of judicial decision, I do not express any opinion as to whether or not a warning of the right to consult counsel is also required. On that point, however, consult *United States* v. *Wade, supra* (1967) 18 L.Ed.2d 1149.

In *United States* v. *Blalock* (E.D. Pa. 1966) 255 F.Supp. 268, the court said (at p. 269): ''First, the consent must have been 'intelligent.' Obviously, the requirement of an 'intelligent' consent implies that the subject of the search must have been aware of his rights, for an intelligent consent can only embrace the waiver of a 'known right.' *Johnson* v. *Zerbst* (1938) 304 U.S. 458 [82 L.Ed. 1461, 58 S.Ct. 1019, 146 A.L.R. 357]; *United States* ex rel. *Mancini* v. *Rundle* (3d Cir. 1964) 337 F.2d 268. Certainly, one cannot *intelligently* surrender that which he does not know he has. Cf. *United States* ex rel. *Mancini* v. *Rundle, supra*; *Walker* v. *Pepersack* (4th Cir. 1963) 316 F.2d 119. The agents here properly warned defendant of his right to counsel and his right to remain silent, but they did not warn him of his right to refuse a warrantless search. The Fourth Amendment requires no less knowing a waiver than do the Fifth and Sixth. The requirement of knowledge in each serves the same purpose, i.e., to prevent the possibility that the ignorant may surrender their rights more readily than the shrewd. . . . To require law enforcement agents to advise the subjects of investigation of their right to insist on a search warrant would impose no great burden, nor would it unduly or unnecessarily impede criminal investigation. Here, the evidence shows no such warning, nor is there any other evidence that Blalock was aware of his Fourth Amendment right. It cannot be said, then, that the Government has sustained its burden of showing that there was an intelligent waiver of a known right. *Commonwealth of Pennsylvania* ex rel. *Whiting* v. *Cavell* (M.D. Pa. 1965) 244 F. Supp. 560, 567, aff'd per curiam (3d Cir. 1966) 358 F.2d 132. This being so, we need not consider whether the consent was voluntary.'' This doctrine was followed in *United States* v. *Nikrasch* (7th Cir. 1966) 367 F.2d 740, 744.)

In *People* v. *Roberts* (1966) 246 Cal.App.2d 715 [55 Cal. Rptr. 62], the Court of Appeal for the Third District considered the problem now before us.[3] Citing two pre-*Dorado* cases, and what it regarded as the significant fact that the

---

[3]It must be pointed out that the discussion in *Roberts* was dictum. The defendant there was not in custody and, in fact, the decision to arrest was not made by the officers until after the search. Even if *Dorado* requires a warning, the rule would not operate until custody had begun. (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838].)

Similarly, I think that the broad language in *People* v. *Chaddock* (1967) 249 Cal.App.2d 483, 485 [57 Cal.Rptr. 582] must be limited to the facts therein involved, namely a request to search not only prior to arrest, but while the police were still in the investigatory stage.

issue was not considered in the post-*Dorado* decision in *People* v. *Bilderbach* (1965) 62 Cal.2d 757 [44 Cal.Rptr. 313, 401 P.2d 921], the court remarked (at p. 729) that "Our Supreme Court has given no indication that it will equate a warning before a consented-to search with a warning before interrogation." But we now have that missing indication. In *People* v. *Henry* (1967) 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557], the Supreme Court reversed a conviction because it determined that no finding of actual or voluntary consent had been made in the trial court. After so ruling, the court then commented (at p. 846) : "If there was no apparent consent or if such consent was not voluntarily given, it is unnecessary to consider whether valid consent can be found in the absence of proof that defendant was advised of his constitutional rights pertaining to searches (see e.g. *United States* v. *Nikrasch,* 367 F.2d 740, 744. . . .''

The same intimation again appears in *Parrish* v. *Civil Service Com.* (1967) 66 Cal.2d 260, 269 [57 Cal.Rptr. 623, 425 P.2d 223]. In that case, the Supreme Court held that the entry involved was not made with the occupant's consent because the record showed that the purported consent was not voluntary. The court then added: "Thus we need not determine here whether a request for entry, voiced by one in a position of authority under circumstances which suggest that some official reprisal might attend a refusal, is itself sufficient to vitiate an affirmative response by an individual who had not been apprised of his Fourth Amendment rights." In a footnote, the court cited the two federal cases above referred to and the law review note cited in footnote 7 *infra.*

The importance of warning a suspect of his constitutional right to object to a search under the conditions here existing is even greater than in cases where police interrogation is to follow. As *Castaneda* and the cases following it make clear, the voluntariness of a "consent" given by a suspect already arrested is inherently suspect. The same reasons for avoiding the necessity of minute judicial examination of de facto voluntariness exist in cases of search as in cases of questioning. If anything, the arrestee is under an even stronger pressure to "cooperate" by consenting to search than he is to talk.

In addition, the requirement of a warning, in cases such as that before us,[4] carries with it a minimum of interference

---

[4] I do not here deal with those "exceptional circumstances," such as the threatened destruction of evidence, where it has been said that

with legitimate police activity. The occupant is already in custody[5] and without opportunity to destroy or secrete any evidence that may exist at his home. The information which led to the arrest will, in almost every case, support an application for a search warrant.[6] Since the arrest was not at a place to be searched, the risk that some other occupant may be alerted is minimized and, in any event, the fact that one occupant is in custody would not prevent the police from going independently to the home and seeking the consent of a co-occupant not in custody. Whatever may be said about the effect of the *Dorado* rules on effective police interrogation, a requirement that a warning of Fourth Amendment rights be given to a suspect already under arrest, in connection with a request for permission to search is, thus, of little practical effect.[7]

Since the search of defendant's apartment was illegal, it follows that the evidence there secured was inadmissible. As I have shown above, without it, the evidence was insufficient to support the finding of guilt.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied October 25, 1967. Peters, J., was of the opinion that the petition should be granted.

---

officers may conduct a search, without a warrant, without consent and not incident to an arrest. (Consult: *Johnson* v. *United States* (1948) 333 U.S. 10 [92 L.Ed. 436, 68 S.Ct. 367]; *Chapman* v. *United States* (1961) 365 U.S. 610, 618 [5 L.Ed.2d 828, 834, 81 S.Ct. 776, 781]; *Gilbert* v. *California, supra* (1967) 18 L.Ed.2d 1178; *People* v. *Huber* (1965) 232 Cal.App.2d 663, 667 [43 Cal.Rptr. 65].)

[5] As I have indicated above, I deal only with cases in which the person whose consent is sought is already in "custody." *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838], and other recent cases, make it clear that *Dorado* and its progeny apply only to those under such police restraint as to make them exceptionably subject to pressure.

[6] It is now settled that a search warrant may issue for the sole purpose of securing evidence to be used against a defendant. (*People* v. *Thayer* (1965) 63 Cal.2d 635 [47 Cal.Rptr. 780, 408 P.2d 108], cert. den., 384 U.S. 908 [16 L.Ed.2d 361, 86 S.Ct. 1342].)

[7] The entire problem, considered both with respect to *Miranda* and with respect to other cases, is considered in a comprehensive Note in (1967) 67 Colum.L.Rev. 130.