[Crim. No. 13106.   Second Dist., Div. Five.   July 19, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. SHARI D. KORTOPATES et al., Defendants and Appellants.

Howard E. Beckler, Dahlstrum, Walton & Butts and Richard A. Walton for Defendants and Appellants.

Thomas C. Lynch, Attorney General, Robert R. Granucci and John P. Oakes, Deputy Attorneys General, for Plaintiff and Respondent.

STEPHENS, J.—After a preliminary hearing, defendants Kortopates and Boggs were charged by information with violation of section 11500.5 of the Health and Safety Code (possession of heroin for sale). One prior non-narcotic felony conviction was charged against defendant Boggs. A motion pursuant to Penal Code section 995 was made and denied as to each defendant, and each pleaded not guilty. Trial by jury was waived by both defendants, and after trial to the court each defendant was found guilty as charged. The prior felony alleged against defendant Boggs was found to be true. Motions for new trial were denied as to each defendant. The court suspended proceedings as to defendant Kortopates, and she was granted probation for five years subject to certain conditions. Defendant Boggs was sentenced to state prison for the term prescribed by law. Both defendants appeal from the judgments of conviction rendered against them.

Each defendant raises a single issue on this appeal, i.e., that the evidence was insufficient to support the judgment.

The illegal activity centered in two adjacent apartments,

Nos. 9 and 10, located at 1531 North Fuller Street, Los Angeles. After the arrest of the defendants, both of these apartments were searched, pursuant to a search warrant. The search of apartment 10 indicated that that apartment was not being used as living quarters. There was no clothing, food, pots or pans, dishes, or little else to indicate that someone was living in it. There were, however, a few glasses, some liquor and soft drink bottles, and a bedspread on the bed. There was a telephone in the apartment which was an extension of one of the telephones in apartment 9, and a bottle of mouthwash in the bathroom. When pressed on questioning, one of the testifying officers expressed the opinion that apartment 10 was being used as the working quarters of a prostitute. Also found in apartment 10, in a linen cabinet in the bathroom, was a significant amount of heroin and various other items of contraband.

The search of apartment 9 revealed it to be a two bedroom apartment. It was apparently inhabited by both defendants and another female, one Billie Zublick, who was also known as Marie Curtis, who was defendant Kortopates' sister. In the kitchen area of that apartment, the officers found toy balloons, milk, sugar, measuring spoons, and a funnel. There was expert testimony indicating that all these items were used for the packaging of heroin for sale. Apartment 9 was leased to four persons: Miss Zublick, an unnamed individual, and the two defendants. The defendants were paying the rent on that apartment at the time of the arrest.

Miss Zublick was renting apartment 10, and the phone in that apartment was in her name. As mentioned above, Miss Zublick appeared to be living in apartment 9, and that is where her clothes were. The testimony also indicated that a search for fingerprints was made in apartment 10. Miss Zublick's fingerprints were found on the bottle of mouthwash in the bathroom, and defendant Kortopates' fingerprint was found inside the linen cabinet in close proximity to the contraband which was found there.

Officers of the Los Angeles Police Department had apartments 9 and 10 under surveillance for a time immediately preceding these arrests, and observed certain activities of the defendants. The officers testified they observed certain persons going to the area of the two apartments. One officer testified that at least two of those persons were known to him to be users of narcotics. On one occasion, defendant Kortopates was seen to leave apartment 9 shortly after someone had arrived

there. She then went to apartment 10, and entered it by use of a key. After a short period of time, she left apartment 10 carrying an object and reentered apartment 9. The person who had entered apartment 9 just prior to Kortopates' leaving it then left the apartment and the building a short time later. This episode occurred on December 8, 1965.

A similar occurrence involving a similar object and following the pattern of the stranger's arrival, the inhabitant of apartment 9 getting something from apartment 10, returning to 9, and then the stranger's departure, was observed involving defendant Boggs. On the day of the arrest, December 11, 1965, defendant Boggs was seen leaving apartment 9 and entering 10. A stranger had not entered 9 preceding this. After a short while, defendant Boggs left apartment 10 carrying a similar object in his hand, and reentered apartment 9. A while later, both defendants left the apartment and entered a car. It was there that they were approached by police officers and placed under arrest. At the time of their arrest, defendant Kortopates was in possession of a key to apartment 9, and defendant Boggs was in possession of keys to both apartments 9 and 10. The testimony also indicates that at the time of his arrest defendant Boggs had a fresh puncture wound on one of his arms and appeared to be under the influence of a narcotic injection.

It is axiomatic that a reviewing court must assume that the trier of fact found every conflict in the evidence in favor of the judgment and made every legitimate inference from those found facts when called upon to examine the sufficiency of the evidence. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778].) With this premise in mind, we examine the legal principles applicable to the instant case.

"Unlawful possession of narcotics is established by proof (1) that the accused exercised dominion and control over the contraband, (2) that he had knowledge of its presence, and (3) that the accused had knowledge that the material was a narcotic." (*People* v. *Groom,* 60 Cal.2d 694, 696 [36 Cal.Rptr. 327, 388 P.2d 359].) "These elements may be established by circumstantial evidence and any reasonable inference drawn from such evidence. [Citations.] Though proof of opportunity of access to a place where narcotics are found, without more, will not support a finding of unlawful possession, the fact that other persons had access to the premises in which the narcotic was found does not negative a finding of joint possession and control. [Citations.]

Exclusive possession of the premises is not required, nor is physical possession of the drug. [Citation.] ██ Constructive possession is sufficient and possession by any person when the defendant has an immediate right to exercise dominion and control over the narcotic will support a conviction.'' (*People* v. *Roberts*, 228 Cal.App.2d 722, 726-727 [39 Cal.Rptr. 843].) ██ There is no question here but that if the evidence is sufficient to justify a finding of possession, it is sufficient to justify the finding that such possession was for the purpose of sale. Our task is then to find if the evidence is sufficient to establish each of the three elements against each of the defendants. We state in advance that we do find substantial evidence on which to base both of these judgments.

As to defendant Kortopates: The trier of fact could have found that she exercised dominion and control over the contraband when she went to apartment 10 to retrieve an item therefrom. Certainly she had access to the items in that apartment, and her fingerprint in the linen cabinet indicates she had dominion and control over the specific items in that cabinet. The only items in the cabinet were the contraband. The fact that the age of the fingerprint could not be determined would seem to go more to the weight than the sufficiency of the evidence. Knowledge of the contraband's presence can be inferred from the fact that items were retrieved from the apartment, and that she had been in the cabinet. Knowledge of the quality of the item can be inferred from the fact that such a rigorous security arrangement surrounded the storage and distribution of the items, and also the finding of the utensils used in the packaging of heroin for sale in commonly frequented areas of apartment 9. The pattern of behavior, the fingerprint in the cabinet where there was found contraband and nothing else, and the articles used for packaging of heroin found in apartment 9, add up to establish each element against defendant Kortopates.

As to defendant Boggs: Obviously there is much overlapping with the evidence against defendant Kortopates. As to Boggs, there was no finding of a fingerprint in the cabinet, but there was the retrieving of an item from the apartment on the very day that the heroin was found, and the condition of the defendant as being under the influence of a narcotic at the time of his arrest. Along with the items discussed above in relation to defendant Kortopates which are applicable to defendant Boggs, the retrieving shows dominion and control.

Along with the other items, being under the influence shows that the dominion and control were over the narcotic, and also knowledge of its presence and quality. (*People* v. *Roberts, supra,* at p. 728).

The judgments are affirmed.

Kaus, P. J., and Moor, J. pro tem.,* concurred.

The petition of appellant Boggs for a hearing by the Supreme Court was denied September 11, 1968.

*Assigned by the Chairman of the Judicial Council.