483 P.2d 1395

STATE of Arizona, Appellee,

v.

Adolph Moreno ARCE, Appellant.

No. 2190.

Supreme Court of Arizona,
In Banc.
April 22, 1971.

**158**

———————

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

UDALL, Justice:

Defendant, Adolph Moreno Arce, was convicted by a jury on two counts: (1) possession of heroin [A.R.S. § 36-1002]; and (2) possession of heroin for sale [A.R. S. § 36-1002.01]. He was sentenced to a prison term of not less than five nor more than seven years on each count; the sentences were ordered to run concurrently. From the conviction and sentence defendant appeals.

For the reasons advanced below, the judgment of the trial court is affirmed as to the second count (possession for sale) and reversed as to the first count (possession). Inasmuch as the two sentences were the same and were ordered to run concurrently, it is not necessary to remand for resentencing.

The facts of the case which are relevant to the determination of this appeal are as follows: Defendant was arrested on the above charges on May 21, 1969, along with Lucy Quinonez, his co-defendant at the trial, by a police officer and a narcotics officer for the Phoenix Police Department. About two weeks before the arrest, the narcotics officer received information which led him to believe that narcotic drugs were being sold at the Quinonez house, so he went into a building next door and observed activities in and around the Quinonez residence. He did this on five separate occasions, the last of which was the evening on which the arrests were made. He observed a number of persons come to the residence, stay a few minutes, and leave. At least one of these persons was known to be a narcotics addict. The nature of the conduct and actions of the people engaged in the activity in and around the Quinonez residence strongly suggested that transactions in narcotic drugs were in fact taking place there. On the evening of the arrest, the narcotics officer observed Lucy Quinonez and defendant Arce step out onto the back porch of Quinonez' home. She had a package in her hand which she gave to Arce. Quinonez then pointed to the fence and Arce took the package to the fence, placed it on the ground, and covered it with a board. Arce and Quinonez then returned inside the house. The narcotics officer and the police officer accompanying him decided to serve the search warrant, and called in for additional policemen to assist. They arrested Arce and Quinonez and confiscated the package, which, as it turned out, contained 16 "papers" of heroin.

Defendant was duly tried and convicted of the charges stated above. The issues raised by defendant Arce on appeal can be summarized as follows:

1. *Double Jeopardy.* Defendant argues that he was subjected to double jeopardy when he was convicted both of possession of heroin and of possession of heroin for sale, when there was but one act or transaction involved.

2. *Effective Assistance of Counsel.* Defendant argues that he was denied the effective assistance of counsel because his lawyer at the trial also represented the co-defendant, Lucy Quinonez, and a conflict of interest developed.

We will discuss these issues in the order presented.

## I. DOUBLE JEOPARDY

Defendant argues that he was subjected to double jeopardy when he was convicted both of possession of heroin and of possession of heroin for sale, when there was but one act or transaction involved.

As to this issue, our recent pronouncement in State v. Price, 106 Ariz. 433, 477 P.2d 523 (1970), is controlling. That case involved the statutory construction of A.R. S. § 13–1641, which defendant Arce cites as authority. That statute provides as follows:

"§ 13–1641. *Different punishments for same offense; limitation and bar.*

An act or omission which is made punishable in different ways by different sections of the laws may be punished under either, but in no event under more than one. An acquittal or conviction and sentence under either one bars a prosecution for the same act or omission under any other."

In construing this statute, we have held that where marijuana is obtained for the purpose of a particular sale there is but one transaction which permits but one conviction and sentence. State v. Price, supra; State v. Duplain, 102 Ariz. 100, 425 P.2d 570 (1967); State v. Vallejos, 89 Ariz. 76, 358 P.2d 178 (1960). We think the same reasoning applies where the substance possessed for sale is heroin rather than marijuana.

In State v. Vallejos, supra, we stated:

"It is indispensable, in order to impose separate punishments, that there be evidence of separate and divisible acts that are not incidental to each other. In determining this question the courts have refused to dissect the evidence minutely in an attempt to find separate offenses, but, on the contrary, have held that a broad transactional approach should be made." 89 Ariz. 76 at 82–83; 358 P.2d 178 at 182.

In the instant case, the state introduced as evidence the package which defendant Arce hid under the board near Quinonez' fence on the night of the arrest. On that night, when the policemen approached the front door of the Quinonez residence they saw Quinonez and Arce in the front room through the window. The narcotics officer knocked on the door, and when it was opened he identified himself and showed his badge. Defendant Arce ran out of the living room and into another part of the house. Quinonez attempted to close the door on the policemen, but they were able to get past the door and into the living room. When they got inside, the narcotics officer saw defendant Arce coming from the bathroom. The toilet had just been flushed and the tank was still being filled. The officer found traces of a powdry substance on the window sill and in the toilet bowl which was the same in appearance as the heroin contained in the 16 "papers" in the package in the back yard. The powdery substance in the bathroom was so small in quantity it was impossible to obtain enough for lab tests. Hence, it was not conclusively established that the substance was heroin. For this reason, we are of the opinion that the only "act" or "transaction" which the evidence clearly shows defendant Arce to have been involved in had to do with the package containing the 16 "papers" of heroin.

Inasmuch as there was only one "transaction" involved in the instant case, the charge against Arce of *possession* of heroin is necessarily an included offense under or within the more serious charge of *possession* of heroin *for sale.* Therefore, if the record shows evidence sufficient to support a conviction on the charge of pos-

session of heroin for sale, the conviction on the lesser charge of possession of heroin cannot stand.

As to the question of whether there is sufficient evidence to support a conviction on the charge of possession of heroin for sale, we must first define the elements of the offense and then look to the record to determine whether the facts of the case show that the elements have been met.

A.R.S. § 36–1002.01 makes it illegal for a person to possess narcotic drugs for sale. Pharmacists and others similarly licensed are exempted from the provisions of this statute, provided they comply with the requirements set forth in the other stattues dealing with drug control. The gravamen of the offense under A.R.S. § 36–1002.01 is the possession of narcotics *for sale*, as distinguished from the mere *possession* of narcotics [A.R.S. § 36–1002] on the one hand and the actual *sale* of narcotics [A.R.S. § 36–1002.02] on the other. Previous decisions of this Court have discussed the elements necessary for a conviction for *possession*, or for an actual *sale*, but this is the first time we have been called upon to set forth the elements required under the in-between classification—i. e., possession *for sale*. In determining what elements are included in the offense, we deem it appropriate to consider the decisions of other courts which have dealt specifically with the question.

The California statute dealing with the offense of possession of narcotics for sale, West's Ann.Health & Safety Code, § 11500.5, is substantially identical in wording to our own statute, A.R.S. § 36–1002.01. The California courts have had occasion to construe the provisions of that statute and to distinguish between the elements required for possession of narcotics for sale and those required for mere possession.

■ Unlawful possession of narcotics is established by proof that the accused exercised dominion and control over a substance, that he had knowledge of its presence, and that he had knowledge that the substance was a narcotic. People v. Korto-

pates, 264 Cal.App.2d 176, 70 Cal.Rptr. 189 (1968). Constructive possession is all that is necessary, and this may be proved by circumstantial evidence. People v. Wilson, 256 Cal.App.2d 411, 64 Cal.Rptr. 172 (1967); cert. denied 391 U.S. 903, 88 S.Ct. 1653, 20 L.Ed.2d 418 (1968). These holdings by the California courts are consistent with the pronouncements of this Court as to the elements required for a conviction for possession of narcotics. See State v. Quinones, 105 Ariz. 380, 465 P.2d 360 (1970); State v. Moreno, 92 Ariz. 116, 374 P.2d 872 (1962).

■ In order to convict on the more serious offense of possession of narcotics *for sale*, the prosecution must not only establish the elements required for a conviction for possession, as set forth above but must also show that the possession was for the purpose of sale. Circumstantial evidence may be used to show that the accused possessed the narcotics for sale rather than for his individual use. For example, in People v. Robbins, 225 Cal.App.2d 177, 37 Cal.Rptr. 244 (1964), the court stated that the large amount of heroin involved, plus the fact that it was packaged in eleven separate containers, supported the inference that it was possessed for sale rather than for personal use. Also, in People v. Campuzano, 254 Cal.App.2d 52, 61 Cal.Rptr. 695 (1967), the court stated that the quantity and quality of the heroin and the nature of its packaging and location reasonably supported the inference that it was held for sale.

In the instant case, the defense presented no witnesses at the trial, and defendant Arce and his co-defendant, Lucy Quinonez, chose not to testify in their own behalf. The prosecution called as witnesses the narcotics officer and police officer who participated in the arrest and the criminologist who examined and tested the contents of the package hidden in the back yard by Arce. Evidence was presented at the trial to the effect that the quantity of heroin involved, the nature of its packaging, and the location and manner in which it was

hidden suggested that the heroin was being held for sale rather than for individual use. For example, one of the police officers who retrieved the package which Arce had hidden in the back yard had been working in the narcotics section of the Pheonix Police Department for some 29 months prior to the night of the arrest of Arce and Quinonez. At the trial he testified as an expert witness on the subject of illegal activities in narcotics and other drugs. He stated that it was his opinion that the package containing the 16 "papers" of heroin was being held for sale rather than individual use. He was then asked:

"Q. Why did you come to that conclusion?

A. Well, for one, a mere heroin user would not have this quantity of heroin on his person. He wouldn't go to the bother of wrapping individual papers for his own use. He would keep it in a smaller, more usable and more disposable container such as a rubber balloon or container, and he would use his supply from this rubber container and retie it and either carry it on his person, in his hand or in his mouth in the case of a bust or a narcotics raid or arrest, he could very quickly place it in his mouth and swallow it without too much time or trouble. A person who used heroin wouldn't have this amount of heroin in that many packets. It would be very dangerous to him and completely unnecessary."

The criminologist who testified at the trial stated that the total weight of the contents of the 16 "papers" of heroin was 3.43 grams, for an average weight per "paper" of 214 milligrams—a little more than $\frac{2}{10}$ of a gram—which is about twice as much as is usually involved in an individual sale. Additional testimony revealed that an individual sale usually involves $\frac{1}{10}$ of a gram of heroin, enough for one "hit"; the price is usually around $10 for this amount. If the person wishes to buy more than this for his own use, he usually buys a half gram or a gram in bulk form rather than in individual papers, and it usually comes in a rubber balloon or similar container so as to be easily stored and disposed of. When heroin is sold in bulk form, the price is usually lower than if the same amount were sold in a number of individual quantities. For example, a gram in bulk form will normally run $40–$50, while the same quantity in individual papers [ten papers of $\frac{1}{10}$ gram each at $10 per paper] will run about $100.00.

There was testimony at the trial to the effect that most users buy only one "paper" of heroin at a time, and that few can afford to buy more than two or three at most. The package containing the 16 "papers" was estimated to be worth at least $160, and probably more. When defendant Arce was searched following his arrest, the officers found $225 in cash in his pocket, consisting of four $20 bills, nine $10 bills, and eleven $5 bills.

It was the function of the jury to decide what reasonable inferences could be drawn from the evidence. State v. Green, 103 Ariz. 211, 439 P.2d 483 (1968). We are of the opinion that the evidence presented at the trial was such that the jury could properly conclude that defendant Arce was in possession of a narcotic drug and that the possession was for the purpose of sale rather than individual use. In other words, the evidence indicated that Arce exercised dominion and control over a substance, that he had knowledge of its presence, and that he knew the substance in his possession was a narcotic drug. Hence, the elements necessary to show actual or constructive possession of narcotics were present. In addition, the evidence indicated that the package hidden by Arce under the board in Quinonez' back yard contained an unusually large quantity of heroin—many times the amount usually involved in an

individual sale. Also, the heroin was packaged in an unusual manner and was handled and hidden in a manner and under circumstances which would strongly suggest trafficking in drugs. Under these circumstances, the jury could reasonably have concluded that the heroin was for sale rather than individual use.

From the above, we are of the opinion that there is ample evidence in the record to support defendant's conviction on the charge of possession of heroin for sale under A.R.S. § 36–1002.01, and the conviction on that charge is accordingly affirmed. As stated earlier in this opinion, the offense of possession of heroin is necessarily an included offense under or within the more serious offense of possession of heroin for sale when there is only one act or transaction involved, and the conviction on this lesser charge must therefore be reversed.

We shall now consider the second major issue raised by the defendant.

## II.  EFFECTIVE ASSISTANCE OF COUNSEL

Defendant Arce and his co-defendant, Lucy Quinonez, were represented by the same attorney at the trial. Defendant argues that a conflict of interest developed at the trial between the attorney's duty of loyalty to the defendant and his duty of loyalty to the co-defendant, and that this conflict of interest resulted in a denial of his Constitutional right to the effective assistance of counsel.

The Sixth Amendment of the United States Constitution provides that "In all criminal prosecutions, the accused shall * * * have the Assistance of Counsel for his defence." Under the Fourteenth Amendment, the right of defendants to counsel in criminal cases is, of course, imperative in state as well as federal trials. Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The essence of this right is the right to effective, competent and adequate representation. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). Where one attorney represents two co-defendants, a conflict of interest which denies one or both defendants the effective assistance of counsel is a distinct possibility. When such a conflict does in fact exist, the conviction cannot stand. Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). However, the mere fact that a single attorney represents two defendants in a joint criminal trial is not ipso facto evidence of lack of effective counsel. Rather, it is necessary that a conflict of interest must have actually existed or have been inherent in the facts of the case from which the possibility of prejudice flowed. Baker v. Wainwright, 422 F. 2d 145 (5th Cir. 1970); State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966), cert. denied, 385 U.S. 1043, 87 S.Ct. 784, 17 L. Ed.2d 687 (1967).

We have examined the record and have failed to see the conflict of interest which defendant Arce claims to have existed at the trial. Defendant argues that the evidence shows that the co-defendant, Lucy Quinonez, had a greater knowledge of the layout of the premises, as indicated by her directing the defendant where to hide the heroin, and a greater awareness of the traffic in drugs that was being transacted at her place of residence, as indicated by the fact that the narcotics officer observed her there on several occasions while he observed defendant Arce there only on the night of the arrest. As defendant's argument goes, if trial counsel had pointed out the above to the jury in an attempt to exonerate Arce of the charges by putting the blame on Quinonez, he would have been failing in his duty to defend Quinonez.

Even if these assertions by defendant are true, they are not sufficient to show a conflict of interest on the part of defense counsel. As is pointed out in the preceding section of this opinion, the evidence presented at the trial was such that the jury

could reasonably and properly have concluded that defendant Arce was in actual or constructive possession of a narcotic drug and that it was being possessed for sale rather than individual use. In other words, the evidence indicated that Arce was exercised dominion and control over a substance which he knew to be a narcotic drug. Also, the quantity of heroin involved, the nature of its packaging, and the location and manner in which it was hidden indicated that the heroin was being held for sale rather than individual use. Hence, the elements necessary for conviction were clearly met and it would have done little good for defense counsel to have argued that Quinonez was somehow *"more* guilty" than was the defendant, or that Quinonez was guilty and Arce was completely innocent. This argument would hardly relieve the defendant of his complicity in and his guilt of the offense charged. We therefore conclude that no actual conflict of interest existed and that defendant's argument that he was denied effective assistance of counsel is without merit.

The trial court sentenced defendant Arce to a prison term of from five to seven years on each of the two counts, and ordered the sentences to run concurrently. For the reasons advanced above, the judgment of the trial court is affirmed as to the second count (possession of heroin for sale), and reversed as to the first count (possession of heroin). Inasmuch as the two sentences imposed by the trial court are the same and are concurrent, it will not be necessary to remand for resentencing. State v. Mendoza, 107 Ariz. 51, 481 P.2d 844 (1971).

It is ordered that, with the issuance of the mandate hereupon, the conviction and judgment for possession of heroin and the sentence imposed thereon are reversed. No further action is required by the trial court.

Affirmed in part; reversed in part.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.