**David CARR, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

May 26, 1972.

James L. Cobb, Jr., Cobb, Combs & Beasley, Covington, for appellant.

John B. Breckinridge, Atty. Gen., Douglas E. Johnson, Asst. Atty. Gen., Frankfort, for appellee.

MILLIKEN, Judge.

This appeal involves the conviction on a drug charge of a guest in an automobile which contained dangerous drugs.

The appellant, David M. Carr, and his companion, Ronnie Dick, were indicted by the Grand Jury of Pulaski County for: (1) grand larceny (KRS 433.220) and (2) possession of dangerous drugs for the purpose of sale (KRS 217.725 and 217.731). Carr was convicted on the drug charge and sentenced to five years in the penitentiary and fined $5,000, but was acquitted on the charge of grand larceny. Dick was found guilty on both charges, receiving the same sentence as Carr on the drug charge and was sentenced to serve an additional year in the penitentiary on the charge of grand larceny. They were tried jointly and were the only witnesses to testify for the defense, each denying that he knew the drugs were in the automobile. Dick testified that the automobile had been loaned for a day or two before their trip to the lake. Carr alone has appealed. The drugs involved were 80 doses of an amphetamine and enough LSD (Lysergic acid diethylomide) for 110 "trips".

These young men had driven from Cincinnati to Cumberland Lake in a blue Camaro automobile belonging to Dick's mother, and three other men from Cincinnati accompanied them in another automobile. According to Carr and Dick they arrived in Pulaski County about noon on September 2, 1970, and the party rented accommodations on Cumberland Lake. According to a witness for the prosecution they had been seen in the area the day before and Carr was seen driving the Camaro between nine and ten o'clock the night of September 2. The two defendants testified that

they left the Lake on the evening of September 2, to go to a laundromat where Carr engaged in conversation with a young woman customer and Dick drove off to a drive-in restaurant where he bought a sandwich which he ate in the car.

Shortly after eleven o'clock P.M. the police became suspicious of Dick's activity near the McAlpin Chrysler parking lot outside Somerset and requested to see his driver's license which Dick said was in the trunk of the car. Dick stepped out of his car, opened its trunk, procured his driver's license and the police requested permission to search the car which Dick consented for them to do. The police found Carr's purse and driver's license in the car and a sack containing small change. A check of the parking lot disclosed a mag wheel off one car and loosened lugs on another wheel. A new tire was found near the fence of the parking lot. Dick's trousers were wet from the knee down and his sandals were muddy, the color of the mud off the unpaved portion of the parking lot, and footprints resembling Dick's were found there. The police noticed a fresh smudge of blue paint on a tire tool when they examined the trunk of Dick's car which matched the color of the car tampered with in the parking lot. Dick was arrested, put in jail, and his automobile taken to Wilson's garage for safe-keeping. The car was searched by the sheriff in the afternoon without a search warrant and the dangerous drugs and a scale were found stashed under the dash. The search was made on the theory that Dick's consent to search the night before continued in its effectiveness.

The appellant, Carr, was not present at the parking lot when Dick was arrested so far as any evidence indicates. The sheriff immediately went to the Lake to find Carr, but did not find him. Carr testified that he did not know what had happened to Dick, so finally the girl he had talked to took him back to his cabin when the laundromat closed, arriving there after one o'clock A.M. The sheriff stopped at Carr's cabin after that but Carr was not there. When Carr learned from the sheriff in the morning that Dick was in jail, he went to the jail to see Dick and was promptly jailed.

As heretofore stated, Carr was acquitted on the charge of grand larceny, but the submission of that issue to the jury when there was no evidence to support it against Carr may have had an adverse effect on the jury's consideration of the drug charge. In any event, we are left with the question whether there was enough evidence to sustain his conviction on the drug charge. Carr was a passenger; he had driven the automobile on occasion; he was a friend of Dick's. There is no direct evidence that he knew the drugs were in the automobile, that he used such drugs, that he pushed or sold such drugs on this occasion or at any other time or that he knew that Dick did. Carr is linked to the drugs by a Siamese integument leading to a two-headed body of suspicion and innocence, not a live, normal squawling conviction. There is no direct evidence that he had possession or control of the drugs. For cases of similar import see, Parks v. State, 46 Ala.App. 722, 248 So.2d 761 (1971); Chariott v. State, (Fla.) 226 So.2d 359 (1969); and for cases dealing with possession for purposes of sale see, Turner v. U. S. 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); State v. Riera, 276 N.C. 361, 172 S.E.2d 535 (1970); State v. Larsen, 4 Wash.App. 356, 481 P.2d 462 (1971); Redden v. State (Del.) 281 A.2d 490 (1971); State v. Arce, 107 Ariz. 156, 483 P.2d 1395 (1971). We reverse the judgment for insufficient evidence to sustain conviction, Walker v. Commonwealth, Ky., 472 S.W.2d 476 (1971), finding it unnecessary to pass on the validity of the afternoon search of the automobile.

The judgment is reversed.

All concur.