[Crim. No. 6455.   First Dist., Div. One.   Mar. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROBERT CLYDE BUSTAMONTE, Defendant and Appellant.

Guy O. Kornblum, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Kelly, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, P. J.—Defendant appeals from a judgment of

conviction, following a jury trial, of possession of a completed check with intent to defraud (violation of Pen. Code, § 475a). Defendant contends that the trial court erred in failing to grant his motions to suppress evidence taken in two separate searches of automobiles, and further that the trial court erred in denying his motion for a mistrial because of a comment on his silence made at the trial by a police officer testifying as a prosecution witness.

## The Facts

On the morning of January 19, 1967, Charles Kehoe, owner of the Speedway Car Wash in Mountain View, discovered that the business office had been burglarized some time since he had closed on the previous day. A check-writing machine, known as a check protector, and a number of blank checks had been removed from the office.

On January 21, 1967, Joe Gonzales and Joe Alcala went with defendant to the Food Fair Market in Mountain View. According to the testimony of Gonzales, defendant filled out a check while they were in the parking lot. This check was a Speedway Car Wash check "protectorized" in the amount of $63.75 and defendant made it out to a "Joe Garcia" and signed it with Kehoe's name. Gonzales took the check into the market where he cashed it in the process of buying a carton of cigarettes. Kehoe identified the check payable to Garcia and stated the signature was not his. After cashing the check on January 21, defendant, Gonzales and Alcala went to defendant's home. Gonzales saw defendant and Alcala lean over the open trunk of defendant's parked Oldsmobile automobile and then the two returned to the truck where Gonzales was waiting, bringing with them two additional Speedway Car Wash blank checks. The amounts of money were filled in on the checks but no names or signatures were entered. The men next unsuccessfully attempted to cash another check at the Blue Bonnett Bar in Sunnyvale.

Gonzales testified that at some time before the incidents of January 21 defendant had shown him the check protector and some blank checks which were contained in the trunk of a Camaro automobile which had been rented by defendant.

On January 31, 1967, defendant, Alcala and Gonzales went to San Jose to find persons willing to use false identification for the purpose of cashing checks. At about 11 p.m. they picked up three other men. Attempts to cash checks at grocery stores and a bar were futile. During the evening they stopped at the Moonlite Shopping Center where Gonzales saw defend-

ant take some checks from defendant's Renault automobile which was in the parking lot.

Police Officer James Rand of the Sunnyvale Department of Public Safety was in a police vehicle alone on routine patrol at approximately 2:40 a.m. on January 31, 1967. He observed an oncoming vehicle which had only one functioning headlight. Rand made a U-turn and also observed that the automobile in question did not have an automobile license plate light. He stopped the automobile which was a black 1958 Ford 4-door sedan. Six men were in the automobile at the time it was stopped, and Rand testified that defendant was in the front seat along with Alcala, and that Gonzales was driving. After Gonzales failed to produce a driver's license, Officer Rand asked if any of the occupants of the Ford had identification. Only Alcala produced a driver's license and he indicated that the automobile belonged to his brother. Officer Rand asked the occupants to step out of the automobile. After the men were out of the car and after Officer Rand was joined by Officer Bissell and Captain Crabtree, he asked Alcala if he could search the car. According to Officer Rand's testimony, Alcala replied "Sure, go ahead." Gonzales also testified that Alcala had given permission for the search and had actually aided the officers. Officer Rand and Captain Crabtree searched the Ford. Wadded up under the left rear seat they found three checks. Each of the checks was "protectorized" in the amount of $67.34, each was signed with the name of Kehoe as maker, and each was a Speedway Car Wash check. One was payable to Robert Gomez and two were payable to Jino Anthony.

Later, pursuant to a search warrant, the Renault at the Moonlite Shopping Center and defendant's Oldsmobile in Sunnyvale were searched. Two checks were found in the Renault and the check protector and several blank checks were found in the Oldsmobile, along with a number of traffic citations naming defendant. A criminologist testified that in his opinion the writing on the Speedway Car Wash checks was the writing of defendant.

### Search of the Ford

At the time that Officer Rand and Captain Crabtree searched the Ford automobile and discovered the three completed checks, there was a total of three police officers and three police vehicles on the highway near the stopped automobile. The occupants were asked to step out of the car and at one point Gonzales was told to stand by the car; at another

time Alcala was told to back away from the area of the search. Gonzales was also given a citation for the missing lights and for his failure to produce a driver's license. According to Gonzales' testimony, the police cars did not have the passengers hemmed in. No one was under arrest at the time of the search and none of the individuals had been advised as to any constitutional rights. After testimony was taken in chambers on the constitutionality of the search, the court ruled that there had been consent to the search and the motion of defense counsel to suppress the evidence was denied.

Defendant, relying on *Parrish* v. *Civil Service Com.*, 66 Cal.2d 260 [57 Cal.Rptr. 623, 425 P.2d 223],[1] now contends that Alcala's consent to the search was obtained in a coercive atmosphere, that the consent was therefore involuntary and the subsequent search consequently illegal. Although we agree with defendant that it is inconsequential that the search involved Alcala's constitutional rights rather than the rights of defendant (see *People* v. *Perez*, 62 Cal.2d 769, 775-776 [44 Cal.Rptr. 326, 401 P.2d 934]), we conclude that his basic argument is without merit. ▌ As the court stated in *People* v. *Michael*, 45 Cal.2d 751, 753 [290 P.2d 852] : ''Whether in a particular case an apparent consent was in fact voluntarily given or was in submission to an express or implied assertion of authority, is a question of fact to be determined in the light of all the circumstances.'' (See also *Castaneda* v. *Superior Court*, 59 Cal.2d 439, 442 [30 Cal.Rptr. 1, 380 P.2d 641].) ▌ In the instant case the prosecution met the necessary burden of showing consent (see *Castaneda* v. *Superior Court, supra*, at p. 444) since there were clearly circumstances from which the trial court could ascertain that consent had been freely given without coercion or submission to authority. Not only officer Rand, but Gonzales, the driver of the automobile, testified that Alcala's assent to the search of his brother's automobile was freely, even casually given. At the time of the request to search the automobile the atmosphere, according to Rand, was ''congenial'' and there had been no discussion of any crime. As noted, Gonzales said Alcala even attempted to aid in the search.

Defendant also argues that there could be no voluntary consent to the search without prior advice to Alcala that he had a legal right to refuse permission to search the car.

[1]This case stands for the proposition that consent obtained by ''covert threats of official sanction or by implied assertions of superior authority'' is not voluntary consent. (P. 268.)

Defendant particularly relies on the federal cases of *United States* v. *Blalock* (E.D. Pa. 1966) 255 F.Supp. 268 and *United States* v. *Nikrasch*, 367 F.2d 740 which stand for the proposition that subjects of investigation should be advised of their rights to insist on a search warrant. ▆ This rule as it applies in the federal courts has not been adopted as the governing rule by the courts in California. As we stated in *People* v. *Linke*, 265 Cal.App.2d 297, 314 [71 Cal.Rptr. 371]: "the courts have rejected the argument that consent will be ineffective in the absence of a warning to the person addressed of his rights under the Fourth Amendment." (See *People* v. *Davis*, 265 Cal.App.2d 341, 347 [71 Cal.Rptr. 242]; *People* v. *Cirilli*, 265 Cal.App.2d 607, 610 [71 Cal. Rptr. 604]; *People* v. *Slade*, 264 Cal.App.2d 188, 190 [70 Cal.Rptr. 321]; *People* v. *MacIntosh*, 264 Cal.App.2d 701, 705-706 [70 Cal.Rptr. 667]; *People* v. *Richardson*, 258 Cal.App.2d 23, 31 [65 Cal.Rptr. 487]; *People* v. *Dahlke*, 257 Cal.App.2d 82, 87 [64 Cal.Rptr. 599]; *People* v. *Campuzano*, 254 Cal.App.2d 52, 57 [61 Cal.Rptr. 695]; *People* v. *Chaddock*, 249 Cal.App.2d 483, 485 [57 Cal.Rptr. 582]; *People* v. *Roberts*, 246 Cal.App.2d 715, 729 [55 Cal.Rptr. 62].) The basic premise behind the California rule was stated in *People* v. *MacIntosh*, *supra*, at page 705: "When permission is sought from a person of ordinary intelligence the very fact that consent is given . . . carries the implication that the alternative of a refusal existed."[2]

## Search of the Oldsmobile

▆ At the trial of the case, defense counsel moved to suppress the evidence (including the check protector) taken from defendant's 1956 Oldsmobile on the ground that the affidavit supporting the search warrant was insufficient. The motion was denied and the evidence was admitted. Defendant contends that it was error for the trial court to deny this motion since the affidavit did not provide probable cause for

[2]In *People* v. *Henry*, 65 Cal.2d 842 [56 Cal.Rptr. 485, 423 P.2d 557] the Supreme Court stated "it is unnecessary to consider whether valid consent can be found in the absence of proof that defendant was advised of his constitutional rights pertaining to searches" (at p. 846) and it has been suggested that this language indicates that the Supreme Court considers the question an open one. (See *People* v. *Griffin*, 250 Cal.App.2d 545, 550, fn. 4 [58 Cal.Rptr. 707].) However, in *People* v. *Campuzano*, *supra*, 254 Cal.App.2d 52, Justice Kingsley entered a dissent at page 58 on the ground that defendant should have been warned of his Fourth Amendment rights. But as was pointed out in *People* v. *Dahlke*, *supra*, 257 Cal.App.2d 82 at page 87, the Supreme Court nonetheless denied a hearing in *Campuzano*.

the issuance of the search warrant. The affidavit[3] in question was signed by Officer John Tomac and essentially stated as follows: that the officer had been charged with the investigation of the subject burglary of Speedway Auto Wash and had probable and reasonable cause to believe that a Paymaster Check Protector, Speedway Auto Wash checks and Speedway Auto Wash wash tickets were located in an Oldsmobile and a Renault automobile which he particularly described; that he had been informed of the incident involving the stopping of the Ford automobile on January 31, 1967, and that he had seen the three checks found therein; that he was informed by Gonzales, one of six persons in the Ford vehicle, that the above-described check protector taken in the above-described burglary and some of the above-described checks were located in the said Oldsmobile, and that some of said checks were located in said Renault; that affiant was told by Detective Ronald McMaster that McMaster had looked into the said Renault and was able to see Speedway Auto Wash checks

[3]The affidavit in its entirety reads as follows:

"Personally appeared before me this 31st day of January, 1967, John Tomac, who, on oath, makes complaint, and deposes and says that there is just, probable and reasonable cause to believe, and that he does believe, that there is now located in a 1956 Oldsmobile, license #CGN 877 located at 622 North Bayview Avenue, Sunnyvale, California, and a 1960 Renault, license #SCN 462 located at 2780 El Camino Real, Santa Clara, California, personal property described as follows:

1. A Paymaster Check Protector;
2. Speedway Auto Wash checks;
3. Speedway Auto Wash wash tickets.

"That your affiant has been a police officer for 10 years and in charge at the Mountain View Police Department Detective Bureau for 5 years. Affiant has been investigating a burglary of Speedway Auto Wash, 343 El Camino Real, Mountain View, California, which occurred the night of January 18-19, 1967.

"That your affiant has been informed that the Sunnyvale Police Department stopped a car at 2 a.m. on January 31, 1967, which car contained 6 people and in which car were found 3 Speedway Auto Wash checks which had been taken in the above described burglary; that your affiant has seen those checks and was informed by Arthur Gonzales, one of the said 6 persons in that vehicle, that the check protector taken in the above described burglary and some of the above described Speedway Auto Wash checks are located in the above described Oldsmobile, and that some Speedway Auto Wash checks are located in the above described Renault automobile.

"That your affiant has been told by Detective Ronald McMaster that he (McMaster) looked into the above described Renault and was able to see Speedway Auto Wash checks inside said vehicle.

"Affiant believes the information furnished by said Arthur Gonzales to be reliable and affiant believes said stolen property will be located where first above described.

"That based upon the above facts, your affiant prays that a Search Warrant be issued with respect to the above location for the seizure of said property, and that the same be held under Calif. P. C. Sec. 1536 and disposed of according to law."

inside said vehicle; and that the affiant believed that the information furnished by Gonzales was reliable.

Defendant's chief argument is that the statement of the informer Gonzales was only conclusionary as to what would be found in the Oldsmobile and indicated no personal knowledge on the part of the informer. Accordingly, he asserts that the affidavit is insufficient because it fails to show a factual basis on which the magistrate could conclude that the informant was reliable, and because it also fails to indicate the factual basis of the informant's information.

The applicable rule as declared in *Aguilar* v. *Texas*, 378 U.S. 108, 114 [12 L.Ed.2d 723, 728, 84 S.Ct. 1509], requires that although an affidavit supporting a search warrant may be based on hearsay information and need not reflect the direct personal observations of the affiant, the magistrate must be informed of some of the underlying circumstances relied on by the person providing the information and some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable.[4] (See *People* v. *West*, 237 Cal.App.2d 801, 805 [47 Cal.Rptr. 341].) In *West*, Justice Fleming notes that "*Aguilar* makes clear that a petition for a search warrant based solely on information from a reliable informant must set forth sufficient data in the supporting affidavit (1) to show that the informant is in fact reliable, and (2) to disclose the source of the informant's knowledge so that the examining magistrate can himself determine whether probable cause exists for the issue of the warrant." (P. 805; see also *Spinelli* v. *United States*, 393 U.S. 410, 413 [21 L.Ed.2d 637, 641, 89 S.Ct. 584, 587].)

In the instant case the affiant set forth underlying circumstances which enabled the magistrate to independently judge the validity of the informant's conclusion that the check protector and some of the Speedway Car Wash checks were located in the Oldsmobile. These underlying circumstances are found in the fact that informant Gonzales was a passenger in the Ford at the time three completed Speedway Car Wash checks were discovered in the back seat. The fact of his presence was a sufficient ground for the magistrate to

[4]Decisions of the United States Supreme Court interpreting the Fourth Amendment apply to California procedure by virtue of the Fourteenth Amendment. (*Mapp* v. *Ohio*, 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933]; *People* v. *West*, 237 Cal.App.2d 801, 804 [47 Cal.Rptr. 341].)

infer that Gonzales knew the source of the checks, the location of the check protector and the location of additional similar checks.

The instant affidavit also discloses that the informant was credible and that his information was reliable. Although this reliability is not based on past experience with the informant, it is shown by substantial corroborative facts known or discovered. (See *People* v. *Cedeno,* 218 Cal.App.2d 213, 220 [32 Cal.Rptr. 246] ; *People* v. *Gallegos,* 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174].) In addition to the circumstance that Gonzales was a passenger in the Ford where three of the stolen checks had been found, this corroboration is supplied by the fact that Detective McMaster was able to see similar checks when he looked into the Renault automobile described in the affidavit and in which Gonzales had stated such checks were located.

### Comment on Defendant's Silence

At the trial during the questioning of Officer McMaster the following testimony was elicited by the district attorney: "Officer, prior to questioning Mr. Bustamonte, was he advised by you or someone in your presence of his rights? A. Yes, he was. Q. And who advised him of his rights? A. Detective Peck. Q. Was it done in your presence? A. Yes, it was. Q. And of what rights was he advised? A. He was advised of his right to counsel, right to remain silent, the fact that anyting he did say to us could be used against him in court and would be used against him, and the fact that, if he could not afford counsel, one would be appointed to him. Q. Was he questioned as to whether he desired to waive those rights? A. Yes, he was. Q. And what did he say if anything? A. He stated that he didn't care to say anything." Following this testimony a discussion was had between court and counsel out of the jury's hearing during which the prosecutor stated that he was surprised by McMaster's answer that defendant stated "he didn't care to say anything," and that he had expected the answer to be that defendant had stated he waived the rights specified in McMaster's admonition. Thereupon the trial court advised the jury that it was striking from the record this series of questions and answers concerning McMaster's admonition to defendant as to his rights, and the jury was instructed that they were "to disregard that series of questions." Thereafter, the trial court instructed the jury in its regular instructions that if an accused in police custody declined to answer questions put to him by the police, such

fact was not to be considered by them as an inference of either his guilt or innocence.

Defendant's counsel moved for a mistrial on the ground that the subject testimony was a prejudicial, unconstitutional comment on defendant's silence. The trial court denied the motion and defendant now argues that the trial court erred in denying his motion because the error was such that it could not be cured by the admonishing instructions. This contention, in essence, is to the effect that the trial court committed error of the type condemned in *Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]. *Griffin* forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt. (P. 615 [14 L.Ed.2d p. 110].)

In the instant case the testimony elicited from officer McMaster was in effect a "comment" by the prosecutor on the accused's silence. (See *People* v. *Haston,* 69 Cal.2d 233, 254-255 [70 Cal.Rptr. 419, 444 P.2d 91].) However, the comment was not allowed to stand but was specifically stricken from the record. Accordingly, it was removed from the jury's consideration and was not before it. (See *People* v. *Medina,* 265 Cal.App.2d 703, 708 [71 Cal.Rptr. 586].) Moreover, the jury was specifically instructed to disregard the testimony which produced the comment. In addition, the trial court instructed the jury that if the accused declined to answer questions put to him by the police, such fact was not to be considered as evidence of guilt. We conclude, therefore, that the court's ruling and its admonitions obviated the claimed error.

Even if we were to assume that the error could not be cured by the admonishing instructions, it cannot be said that the error resulted in a miscarriage of justice which would require a reversal of the judgment. In view of the overwhelming evidence against defendant, there is no reasonable possibility that a different verdict would have been reached had the subject testimony not been given. Accordingly, we are able to declare a belief that it was harmless error beyond a reasonable doubt. (*Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 8, 1969.