[Crim. No. 21106. First Dist., Div. Four. Jan. 30, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
DWAYNE HACKETT, Defendant and Appellant.

### COUNSEL

David Weintraub, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein, John T. Murphy and Clifford K. Thompson, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

### OPINION

**POCHÉ, J.**—Appellant pleaded guilty to receiving stolen property (Pen. Code, § 496, subd. 1) following his unsuccessful motion to suppress which we review pursuant to Penal Code section 1538.5, subdivision (m).

The motion to suppress was submitted on the transcript of the preliminary hearing which shows that on September 25, 1979, at approximately 9 in the evening, Fairfield Reserve Police Officer Harris was dispatched to investigate an apparently abandoned, licenseless black over red 1965 Chevrolet Impala, illegally parked on Warren

Street. In the immediate vicinity of that Impala, Harris' father found an undated automobile repair receipt issued by a Vacaville garage for a 1965 Chevrolet Impala, license number NHJ 645. A radio check revealed license number NHJ 645 belonged to a cream-colored Impala reported stolen from Vacaville.

Across the street in a private driveway Officer Harris saw a car matching this description except for the license number. He investigated by opening the unlocked door of the vehicle to obtain its vehicle identification number (VIN). A subsequent radio check disclosed that the VIN matched that of the vehicle which had been stolen.

## STANDING

The trial court erred in placing its denial of the section 1538.5 motion on appellant's lack of standing to challenge the search of the cream-colored Impala he was charged with stealing.

Evidence obtained in violation of Fourth Amendment constitutional guarantees is inadmissible. (*People v. Cahan* (1955) 44 Cal.2d 434, 445 [282 P.2d 905, 50 A.L.R.2d 513].) Any criminal defendant brought before a California court may challenge the admissibility of any evidence offered against him on Fourth Amendment grounds. (*People v. Superior Court* (*Randall*) (1973) 33 Cal.App.3d 523, 528 [109 Cal.Rptr. 143].) Accordingly, a criminal defendant may challenge the evidence used against him, even though it was obtained in violation of some third party's rights. (*People v. Martin* (1955) 45 Cal.2d 755, 761 [290 P.2d 855]; *Kaplan v. Superior Court* (1971) 6 Cal.3d 150, 151 [98 Cal.Rptr. 649, 491 P.2d 1].)

As early as 1955, in *People v. Martin, supra*, the California Supreme Court addressed the question and permitted a defendant to challenge evidence obtained during the illegal search of a third party. Defendant was charged with bookmaking, but disclaimed any interest in the premises searched or the property seized. Justice Traynor explained that such disclaimer did not preclude defendant from challenging the search and seizure. "Since all of the reasons that compelled us to adopt the exclusionary rule are applicable whenever evidence is obtained in violation of constitutional guarantees, such evidence is inadmissible whether or not it was obtained in violation of the particular defendant's constitutional rights." (*Id.*, at p. 761.) By 1963 the *Martin* rule was so

commonplace that trial counsel's failure to know and to invoke it constituted such a lack of competence as to reduce the proceedings to a "farce and a sham." (*People* v. *Ibarra* (1963) 60 Cal.2d 460, 464-465 [34 Cal.Rptr. 863, 386 P.2d 487].)

*Martin* was strongly reaffirmed in *Kaplan* v. *Superior Court, supra,* 6 Cal.3d 150, where the high court held that a criminal defendant had standing to raise the illegality of the search of the minor to whom he had allegedly sold drugs. Justice Mosk, speaking for the majority, explained that it is semantically inaccurate although convenient to refer to *Martin* "as a vicarious exclusionary rule." Instead, "the *exclusionary* rule is the *Cahan* principle that evidence obtained by means of an illegal search and seizure is inadmissible; the rule of *standing* is the *Martin* precept that a defendant is permitted to invoke that exclusion even though the immediate victim of the illegal search and seizure was a third person." (*Id.,* at p. 160, fn. 8.)

*Martin* and *Kaplan* permit a defendant to challenge an allegedly illegal search of his victim's property. For example, in *People* v. *Gale* (1973) 9 Cal.3d 788 [108 Cal.Rptr. 852, 511 P.2d 1204], defendants were permitted to assert the Fourth Amendment rights of the owners of the cars that they were suspected of tampering with or burglarizing. "[The § 1538.5 motion] is, in a sense, in the nature of a proceeding in rem against the evidence itself. The only connection that need be shown between the evidence and the moving party, accordingly, is a sufficient interest to give the later *standing* to make the motion. In the case at bar standing is provided by the rule in this state that a defendant against whom incriminating evidence is offered in a criminal prosecution, as here, has standing to seek its suppression on the ground of illegal search and seizure." (*Id.,* at p. 793.)

*People* v. *Solario* (1977) 19 Cal.3d 760 [139 Cal.Rptr. 725, 566 P.2d 627], and *Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297 [155 Cal.Rptr. 559, 594 P.2d 984], cited by the People, do not alter this conclusion. Instead, in each decision the Supreme Court addresses the merits of the Fourth Amendment claim, impliedly holding that defendant had standing to assert it.

In *People* v. *Solario, supra,* an officer after looking into an apartment and seeing two individuals who matched the descriptions of

burglary suspects, entered the apartment without knocking,[1] and arrested them. Defendant claimed that the entry of his victim's abode was illegal, and objected to his arrest as a result of that entry. The court (per Clark, J.) considering the merits of the motion held that the entry was not illegal.

In *Cleaver v. Superior Court, supra,* defendants sought refuge in the basement of a house owned and occupied by an innocent third party. After a gunfight with the police, the house caught fire, defendant emerged and was arrested. The police searched the basement twice without a warrant. Finding exigent circumstances the court rejected defendant's argument that the warrantless search violated the Fourth Amendment rights of the homeowner. Again, as in *Solario,* the court did not question defendant's standing to make the section 1538.5 motion, but rather, addressed the merits of his contention. Justice Richardson, writing for the majority, explained: "Finally, our conclusion that the exigencies of the circumstances justified the warrantless entries and limited searches in question here, is *reinforced* by the fact that the police were aware that the residence building was owned by an apparently innocent third party, and not by any of the defendants or suspects of the crime. *In this case, defendant intruder vicariously asserts the privacy rights of the owner.* As we have noted, the police had ample reason to suspect that weapons, ammunition, and perhaps other potentially dangerous items (e.g., tear gas canisters) remained in the fire-damaged basement. Under such circumstances it is wholly unrealistic to presume that an absent property owner would either expect, or desire, the police to postpone, until a search warrant was obtained, entry onto the premises whether for a search for evidence or to protect the property." (*Id.,* at p. 306, italics added.)

The People also quote the concurring opinion in *People v. Shaw* (1971) 21 Cal.App.3d 710, 715 [98 Cal.Rptr. 724], to the effect that a criminal should not be permitted to assert the Fourth Amendment rights of the victim. However, that belief was based upon the premise that the enactment of Evidence Code section 351 abolished the *Martin*

---

[1] *Solario* primarily stands for the proposition that a police officer having probable cause to believe that a residence is being burglarized, need not comply with the "knock and notice" requirements of Penal Code section 844 before entering to arrest the burglar. The policies behind section 844 (as contrasted with the exclusionary rule) e.g., protection of privacy and safety of homeowners, and the safety of the police, would not be furthered by requiring compliance with section 844 before entry to halt a burglary in progress. (*Id.,* at pp. 762-764.)

rule. *Kaplan* expressly held that section 351 had no such effect. (*Kaplan, supra,* 6 Cal.3d at p. 716.)[2]

## THE SEARCH OF THE IMPALA

This brings us to the legality of the search[3] of the Impala.

■ Officer Harris had probable cause to believe that the cream-colored Impala was stolen. The combination of the repair receipt describing in detail a car recently stolen, which receipt is discovered in the immediate vicinity of an early model car matching the description with different license plates, an abandoned car of the same make and year with no license plates also nearby, and the officer's knowledge that car thieves often feel unconstrained in changing the license plates, made it more probable than not that the cream-colored Impala in the driveway was the stolen car described on the repair receipt. When the owner of the Impala reported it stolen, she was asking the police to help her recover it. It was reasonable to assume the owner expected the police to check the VIN number of the car they reasonably believed was the stolen vehicle. In other words, by reporting her car stolen, the owner effectively consented to a check of the VIN number by the police officer. Officer Harris did not exceed the bounds of that consent.

Although appellant had standing to challenge search of his victim's car, the search was perfectly legal as is the judgment of conviction.

Affirmed.

Rattigan, Acting P. J., and Anderson, J.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied April 1, 1981. Richardson, J., was of the opinion that the petition should be granted.

---

[2]*People* v. *Cook* (1977) 69 Cal.App.3d 686, 690 [138 Cal.Rptr. 263], *People* v. *Sanchez* (1969) 2 Cal.App.3d 467, 474 [82 Cal.Rptr. 582], and *People* v. *Garber* (1969) 275 Cal.App.2d 119, 128 [80 Cal.Rptr. 214], cited by the People, address as in *Solario* the defendant's right to raise a "knock and notice" violation (Pen. Code, § 844) and thus are unpersuasive in the instant case.

[3]We reject the People's contention that Officer Harris' conduct of opening the car door to inspect the VIN is not a search within the meaning of the Fourth Amendment.

*Assigned by the Chairperson of the Judicial Council.