[Crim. No. 37925. Second Dist., Div. Five. Nov. 10, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
NOBLE JAMES KELLY, Defendant and Appellant.

576

COUNSEL

Katherine Lerner Lynn, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Shunji Asari and Paul C. Ament, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

ASHBY, J.—By jury trial appellant was convicted of receiving stolen property. He was sentenced to a midterm of two years in the state prison.

The stolen property appellant was found to have received was a maroon 1978 Cadillac belonging to Mr. and Mrs. Holt of Compton. The car was discovered at appellant's residence bearing the license plates of a green 1978 Cadillac belonging to Allen Douglas, which had been stolen a few days prior to the Holt theft.

The Holt car was stolen from the parking lot of the Cerritos shopping mall on September 21, 1979. On September 17 the Douglas car had been stolen from a driveway in Compton. The Douglas car was recovered in the parking lot of the Cerritos shopping mall on September 21, 1979, without its license plates.

On October 31, 1979, Officer Tounzen of the Long Beach Police Department auto theft detail was looking for Donald McCaney to arrest him for an unrelated auto theft. He saw McCaney on the street in front of 140 East 69th Way and arrested him. Appellant and another man walked up. McCaney asked appellant to make a phone call for him. Officer Tounzen asked appellant if McCaney lived with him, and appel-

lant replied that he did. Appellant then walked to the backyard and the other man left in a car.

Officer Tounzen observed a maroon late model Cadillac in the driveway and decided to run the license number by police radio. The report came back that the license plates in question had been reported lost or stolen. Officer Tounzen walked to the backyard where appellant was cleaning a fish tank and asked if appellant knew to whom the Cadillac belonged. Appellant replied that it belonged to some white dude named Douglas Allen or something like that. Tounzen asked if appellant knew where the man lived, and appellant pointed to a small house to the rear, 142 East 69th Way, which shared the common driveway. Officer Tounzen knocked at that door and got no answer. He then asked appellant if he had ever seen the man drive the vehicle, and appellant replied he did not know. The officer asked if appellant ever drove the vehicle and appellant stated no. The officer asked if appellant ever had anything to do with the vehicle, and he stated no.

Officer Tounzen went back to the car and viewed the vehicle identification number through the window. He ran that number on the radio and learned that the car had been stolen on September 21. The officer further learned that the license plates on the vehicle were registered to Allen Douglas but had recently been stolen from a different vehicle.

Officer Tounzen entered the vehicle. In the glove box he found a job application with appellant's name on it. He then arrested appellant. After the car was towed and impounded, Officer Tounzen made a further search and found the Douglas registration.

John Mulvahill lived at 142 East 69th Way. He did not know anyone named Douglas Allen (*sic*). He had seen appellant drive the maroon Cadillac.

Appellant testified in his own defense. A man named Jerome Gatewood had moved in temporarily with appellant and McCaney. Gatewood brought the car with him. Appellant did not know it was stolen. Although Gatewood had no job, Gatewood always had a lot of cash from dealing in dope, and told appellant he had bought the car. Appellant had driven the car several times. Gatewood was the other man with appellant when McCaney was arrested. Gatewood did not leave in a car but rather entered the house when appellant went to the backyard. Shortly thereafter, Gatewood came running out of the house, saying,

"Hey, the officers call in my car, I have a warrant. Tell him, you know, I am not here" and Gatewood jumped the gate. When the officer came to the backyard appellant did not tell him about Gatewood. Appellant denied ever driving the car because he did not want to get into trouble. He told the officer it belonged to "the dude that live in the back." Appellant mentioned the name Douglas Allen (*sic*) because appellant had seen the registration in the car before.

Appellant contends (1) that the trial court's comments at the time of denying bail show that the court prejudged the question of appellant's sentence; (2) that Officer Tounzen illegally searched the Cadillac; and (3) that the prosecutor improperly elicited evidence of appellant's invocation of his right to remain silent. We find no merit to the arguments.

During trial appellant was on $1,000 bail. When the verdict of guilty was rendered, the court indicated appellant should be remanded or that bail should be raised substantially. The court inquired about appellant's record and was told he had two arrests for grand theft but no convictions, and a couple of juvenile matters, one apparently involving an assault with a deadly weapon.

"THE COURT: Well, he's probably going to have to do some time, and, of course, he gets credit for it. So he can either be remanded, or I'm going to raise the bail to $5,000? [¶] (Mr. Hix confers with the defendant.) [¶] THE COURT: He will get credit for all time, and I'm satisfied he's gonna have to do some time. [¶] All right, defendant is remanded. [¶] MR. HIX: The bail is reset? [¶] THE COURT: No, we'll just exonerate the bail. [¶] Defendant is remanded."

■ Appellant construes these remarks to mean that the court had prejudged that it would ultimately sentence appellant to time in custody. We disagree. To rule on the question of bail after conviction, the court properly took into account appellant's record and the seriousness of the offense charged. (Pen. Code, § 1275.) The switching of license plates indicated a fairly sophisticated theft. That the court estimated the probabilities at the time of the bail decision does not mean that the court prejudged the sentence or that the court failed to exercise its discretion properly at the time of sentencing, when the court had before it more complete information by way of the probation officer's report. The report indicated appellant was part of a substantial auto theft operation.

■ Appellant next argues that Officer Tounzen improperly searched the car without a warrant. We hold the trial court correctly ruled that the car could be searched without a warrant because it was stolen. (*People* v. *Hackett* (1981) 115 Cal.App.3d 592, 598 [171 Cal.Rptr. 320]; *People* v. *James* (1969) 1 Cal.App.3d 645, 648 [81 Cal.Rptr. 845]; *People* v. *Hill* (1974) 12 Cal.3d 731, 748, fn. 18 [117 Cal.Rptr. 393, 528 P.2d 1].) The car was itself evidence of the crime being investigated, the theft of the car. (*People* v. *Hill, supra.*) This distinguishes the search from a search of a closed container within a car (*People* v. *Dalton* (1979) 24 Cal.3d 850, 858 [157 Cal.Rptr. 497, 598 P.2d 467]) or a routine inventory of a car belonging to a suspect. (Cf. *Mozzetti* v. *Superior Court* (1971) 4 Cal.3d 699, 707 [94 Cal.Rptr. 412, 484 P.2d 84].) The registration certificate and the job application were properly admitted into evidence.[1]

■ Finally, appellant contends the prosecutor violated his constitutional rights by (1) eliciting testimony concerning appellant's nonwaiver of his *Miranda* rights and (2) by commenting upon appellant's *prearrest* silence. Neither contention is meritorious in the circumstances of this case.

On cross-examination of the arresting officer, defense counsel asked about a conversation between the officer and appellant at the jail.[2] Immediately thereafter, there was redirect examination by the prosecutor.[3]

---

[1]Appellant contends the prosecution relied upon an erroneous theory that appellant had no standing to object to search of the stolen car. This was not the trial court's theory, however. (See *People* v. *Hackett, supra,* 115 Cal.App.3d at pp. 595-598.)

[2]"Q. [By counsel for appellant] Defendant Kelly stated to you, didn't he, that he—well, you told him you didn't think he stole the car, didn't you?

"A. No, I don't think so. We had a conversation after he had been advised of his rights in the jail house, just talking back and forth. Nothing was ever written. He was handcuffed to the wall in the jail system.

"Q. You told him, didn't you, that you thought he knew the car was stolen?

"A. Yes.

"Q. And he stated that he did not, didn't he?

"A. Yes."

[3]"Q. [By the prosecutor] You stated that you had a conversation with him after he was advised of his rights and he waived them; is that right?

"A. Yes.

"Q. That was at the station?

"A. He never waived his rights. He said that he did not want to speak to anyone regarding the car. Therefore, the formal interview at that time by law is terminated.

"Q. Okay. So you advised him of his rights, did you? He didn't waive 'em?

"A. Yes, he chose to remain silent."

Upon timely objection, evidence that the defendant chose to remain silent after being advised of his *Miranda* rights is inadmissible. (*People v. Andrews* (1970) 14 Cal.App.3d 40, 47 [92 Cal.Rptr. 49].) However, in this case there was no objection to this evidence in the trial court. The point must therefore be rejected on appeal, unless it could be said that even had there been a timely objection, an admonition to the jury could not have cured the error. (*People v. Green* (1980) 27 Cal.3d 1, 34 [164 Cal.Rptr. 1, 609 P.2d 468].) Depending on the circumstances, an error of this nature may or may not be cured by a timely objection and admonition to the jury. (Compare *People v. Bustamonte* (1969) 270 Cal. App.2d 648, 656-657 [76 Cal.Rptr. 17]; *People v. Farris* (1977) 66 Cal.App.3d 376, 390 [136 Cal.Rptr. 45], with *People v. Reese* (1963) 220 Cal.App.2d 143, 147 [33 Cal.Rptr. 561]; *People v. Andrews, supra,* 14 Cal.App.3d at p. 48.) In the circumstances of this case we hold an admonition could have cured any error, and therefore the failure to object requires rejection of appellant's contention. (See *People v. Matthews* (1980) 108 Cal.App.3d 793, 795 [167 Cal.Rptr. 8].) The testimony came out in a fairly innocuous context, as appellant had brought up the subject of the conversation between him and the officer, which intentionally or unintentionally tended to create the impression that appellant had actually made an uncontradicted statement that he was innocent. The prosecutor apparently wanted to show that Officer Tounzen could not test this statement since appellant could not be questioned. (See *People v. Bustamonte, supra,* 270 Cal.App.2d at p. 656; *People v. Perry* (1969) 271 Cal.App.2d 84, 105-106 [76 Cal. Rptr. 725].) Whether or not this was error the matter could have been cleared up by a timely objection and admonition.

Appellant's other point concerns the conversation appellant had with Officer Tounzen in his backyard before the arrest. ■ Appellant contends the prosecutor committed misconduct in cross-examining appellant, and in arguing to the jury, about appellant's testimony at trial that Jerome Gatewood possessed the car and came running out of the house and over the backyard gate when he learned the police were checking records on the car.[4] Appellant contends this was an impermissible com-

---

[4]The prosecutor cross-examined appellant about this story as follows:

"Q. Did you ever tell the police it was Jerome's car?

"A. No, I didn't.

"Q. Why?

"A. Because I already got myself in enough trouble by talking to the guy as much as I did.

"Q. Did you tell the police that you have never driven the car?

ment upon appellant's "silence." There was no objection on this ground below (*People v. Reeves* (1980) 105 Cal.App.3d 444, 455 [164 Cal. Rptr. 426]) and in any event there was no impermissible comment upon appellant's "silence."

At the time of his initial conversation with Officer Tounzen, appellant was not in custody. Appellant was not given a *Miranda* warning, because none was due. The officer was engaged only in general investigation and appellant was treated as a witness rather than a suspect. Appellant was not "silent." He intentionally gave a false and misleading story to the officer that the car belonged to the person in the rear house. In bringing out the inconsistency between the statements voluntarily made by appellant at that time and his testimony at trial, the prosecutor was not commenting upon. appellant's "silence" but rather was engaging in permissible impeachment. (*People v. Martin* (1980)

---

"A. Yes, I did.

"Q. Why did you feel it necessary to tell them something that wasn't the truth?

"A. Because of the fact when he walked back there he said that the license plates were stolen on the car.

"Q. Did he tell you that before—

"A. That was the first thing ·he said when he walked back there.

"Q. And did you tell him you had never had anything to do with the car?

"A. Yes, I did.

"Q. And did you tell him some White dude owned. it?

"A. Yes, I did.

"Q. Did you tell that White dude's name was Douglas Allen or something like that?

"A. Yes, I did.

"Q. How did you know that person's name was Douglas Allen?

"A. Okay. What you saying now?

"Q. How did you know to tell the officer that some White dude named Douglas Allen owned that car?

"A. When Jerome ran I tell him it's the dude that live in the back, you know. So I said, okay, so when the officer came back there I told him, I said well, I seen that registration in the car before.

"Q. Okay. So you had seen the registration in the car?

"A. Yes.

"Q. And you told the officer you had never driven the car, you don't say anything about Jerome then, you tell him the White dude owned the car named Douglas Allen lives where Mr. Mulvahill is?

"A. Yes. See, Jerome said that he had a warrant."

The prosecutor argued to the jury: "... The first time we heard about Jerome was today. Defendant had a conversation with the officer at that time, when he could have told him about Jerome, said, 'Jerome just jumped over the fence. It's his car. I didn't know what was happening. I may have driven it, but Jerome jumped over the fence. I think he went that way.' [¶] But he chose not to do that. He chose instead to just have a string of falsehoods, just an incredible string of falsehoods. [¶] .... [¶] ... What I'm saying is when the defendant—ideal opportunity to put the heat away from himself and on Jerome, the person who allegedly should sustain the heat, he did not do it."

101 Cal.App.3d 1000, 1008-1009 [162 Cal.Rptr. 133]; *People v. Barker* (1979) 94 Cal.App.3d 321, 328-330 [156 Cal.Rptr. 407]; *People v. Farris, supra*, 66 Cal.App.3d at p. 390.)

The judgment is affirmed.

Stephens, Acting P. J., and Hastings, J., concurred.